# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-DP-01088-SCT

*JOSEPH DANIEL BURNS, a/k/a "JOJO" BURNS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/96 |
| TRIAL JUDGE: | HON. FRANK ALLISON RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MELVIN C. ELLIS, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LESLIE S. LEE |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 11/19/98 |
| MOTION FOR REHEARING FILED: | 12/3/98 |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case is before this Court on appeal from the Circuit Court of Lee County, Mississippi. Joseph Daniel "JoJo" Burns ("Burns") was indicted during the November 1995 term of the Lee County Grand Jury for the capital murder of Floyd Melvin McBride ("McBride") on November 10, 1994 while engaged in the commission of armed robbery in violation of § 97-3-19(2)(e). The three-day trial began September 3, 1996 and ended September 5, 1996 with the jury returning a verdict of guilty. The sentencing hearing was held September 6, 1996. The jury heard final arguments from both the defendant and the state before retiring to the jury room for deliberation. After 2½ hours of due consideration, the jury returned with a verdict. The following verdict was returned in the proper form:

We the jury unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the Capital Murder:

1- That the defendant, Joseph Daniel Burns, actually killed Floyd Melvin McBride;

2- That the defendant attempted to kill Floyd Melvin McBride ;

3- That the defendant intended that the killing of Floyd Melvin McBride take place;

4- That the defendant contemplated that lethal force would be employed in this crime.

Next, we the Jury, unanimously find that the aggravating circumstances of the defendant, Joseph Daniel Burns, was engaged in the commission of a robbery is sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance, and we unanimously find that the defendant should suffer death.

/s/ Sonny Turner

Foreman of the Jury

¶2. The trial judge sentenced Burns to death by lethal injection to be carried out on October 11, 1995. Burns filed a Motion to Stay Execution pending appeal which was granted on September 13, 1996. Burns' Motion For JNOV Or In The Alternative A New Trial was denied by the trial judge on September 18, 1996. Burns timely filed a Notice of Appeal with this Court on October 1, 1996. Following the denial of his Motion for Supersedeas Bond Pending Appeal, Burns is currently being held in the maximum security unit at The Mississippi State Penitentiary pending the outcome of his appeal. Burns raises the following issues on appeal:

**I. THE COURT ERRED BY FAILING TO GRANT REQUESTED PRELIMINARY HEARING.**

**II. THE COURT ERRED BY FAILING TO HAVE ENTIRE PROCEEDINGS RECORDED.**

**III. BURNS WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A RIGHT TO A FAIR TRIAL BY THE COURT'S DENIAL OF BURNS' REQUEST FOR A CONTINUANCE.**

**IV. THE COURT ERRED IN FAILING TO QUASH THE INDICTMENT.**

**V. SUFFICIENT EVIDENCE WAS NOT PRESENTED TO CONVICT BURNS ON THE INDICTED CHARGE.**

**VI. THE COURT ERRED IN ALLOWING THE INTRODUCTION OF THE EXEMPLARS WHERE THE ITEMS WERE TAKEN IN VIOLATION OF BURNS' RIGHTS UNDER THE FOURTH, FIFTH, AND SIXTH AMENDMENT OF THE U.S. CONSTITUTION.**

**VII. THE COURT ERRED IN ALLOWING THE LETTERS OVER THE OBJECTION OF THE DEFENDANT WHERE THE PROSECUTION DID NOT LAY THE PROPER FOUNDATION FOR INTRODUCTION AND DID NOT REQUIRE THE PROSECUTION TO SATISFY THE "CHAIN OF CUSTODY" OF SAID LETTERS.**

**VIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR**

**DIRECTED VERDICT, BOTH AT THE CLOSE OF THE STATE'S CASE AND AT THE CLOSE OF THE ENTIRE CASE, AND IN DENYING MOTION FOR NEW TRIAL.**

**IX. THE COURT ERRED IN ALLOWING THE STATE TO MAKE PREJUDICIAL REFERENCE TO PRIOR CRIMES IN VIOLATION OF M.R.E. RULE 404.**

**X. THE EVIDENCE PRESENTED PROVED TO BE INSUFFICIENT WHERE GREAT RELIANCE WAS PLACED ON UNCORROBORATED, INCREDIBLE TESTIMONY.**

**XI. THE TRIAL COURT ERRED IN ADMITTING UNNECESSARY AND GRUESOME AUTOPSY PHOTOGRAPHS INTO EVIDENCE.**

**XII. THE DENIAL OF BURNS' RIGHT TO AN INDEPENDENT PSYCHOLOGIST EXPERT TO ASSIST HIS DEFENSE VIOLATED CONSTITUTIONAL RIGHTS.**

**XIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A MANSLAUGHTER INSTRUCTION.**

**XIV. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE UNDERLYING CRIME OF ROBBERY.**

**XV. THE COMMENTS MADE BY PROSECUTION AMOUNTED TO PROSECUTORIAL MISCONDUCT.**

**XVI. THE COURT MUST REMAND THIS CASE FOR A NEW SENTENCING PROCEEDING, IN LIGHT OF PROSECUTION'S MENTIONING OF UNDEFINED AGGRAVATORS WHICH WERE VIGOROUSLY ARGUED TO THE JURY AS THE GROUNDS FOR A DEATH SENTENCE.**

## STATEMENT OF THE FACTS

¶3. The facts, as revealed in the record, indicate that during the day of November 9, 1994, Burns and Phillip Hale went to the Town House Motel on Gloster Street in Tupelo, Mississippi where Mike McBride was the hotel manager. Phillip Hale testified that he and McBride were friends, and that he introduced Burns to McBride on November 9, 1994. Phillip Hale testified that he went in and asked McBride if they could stay there three or four days. McBride said sure, and Phillip went out to the truck, got his bag and asked Burns to come inside. Phillip Hale testified that they then "hung out for awhile" with McBride. Burns and Phillip Hale then went to get something to eat and watched a movie before returning to the motel office. McBride asked Burns and Phillip Hale if they wanted to help him count $30,000. They agreed and while they were counting the money, the two decided to rob McBride. Burns and Phillip Hale agreed that Hale would hit McBride and Burns would take the money. Phillip Hale further testified that he hit McBride and knocked him down and left the room to make sure nobody was coming. When he returned to the room, Burns was stabbing McBride in the back of the neck with a knife, a fork, and a phillip's head screwdriver. When Hale asked Burns what he was doing, Burns stabbed Hale in the foot. Hale testified that McBride was repeating "why me" while he was being stabbed to death. After the stabbing, Burns and Hale wiped fingerprints, got the money and left. The record reflects that $3,000 was taken from a tin safe in McBride's office. Burns broke the lock off of the safe with a pair of pliers.

¶4. After the stabbing, Burns and Phillip Hale returned to the trailer in Verona where they were living with Janie Taylor and Brandi Sides. Burns went into Janie Taylor's room, whom he was dating at the time, woke her up, told her what they had done, counted the money, and divided the money between himself and Hale ($1,500 each).

¶5. Phillip Hale then went to his brother, Jeff's, shop. His brother was out of town. Burns showed up later and informed Phillip Hale that he had thrown the "stuff" behind the trailer park where they lived. The testimony of State's witness, Carrie Cryder, revealed that on December 24, 1994 he and Burns were riding around, and Burns retrieved the weapons from behind the trailer and threw them off of the bridge on Brewer Road.

¶6. Later that day, on November 10, 1994, Phillip Hale parked the truck the two had driven to the Town House Motel behind Jeff's house because he was fearful that someone had seen the truck and could identify Burns and Hale by the truck. Jeff Hale had loaned his brother the truck several weeks before McBride was killed.

¶7. When Jeff Hale returned to town, he was suspicious about why Phillip had parked the truck behind the house. Also, Phillip paid his brother, Jeff, $600 he owed him, and this too made Jeff suspicious about where Phillip got the money. When Jeff first asked Phillip where the money came from, Phillip lied to him. Phillip testified that he ultimately told his brother that he and Burns killed McBride, although there is some question about when he told him. Burns also told Jeff Hale what happened. The following weekend, on November 12, 1994, Burns, Phillip Hale and his brother, Jeff went to Tunica to the casinos and spent the money they had stolen from the Town House Motel returning to Tupelo with $100 or $200.

¶8. A guest of the Town House Motel the night of November 9, 1994 testified for the State. He testified that he remembered seeing two men arrive at the motel in a tan truck that fit the description of the truck belonging to Jeff Hale that Phillip Hale was driving on the day of the murder. The guest testified that they arrived about 8:00 p.m. and left around 10:00 or 10:30 p.m. McBride's body was found by another employee of the motel around 7:00 a.m. the next morning.

¶9. Phillip Hale and Burns were not arrested until August of 1995 concerning this crime. The Tupelo Police Department arrested them pursuant to an investigation that ensued after two anonymous phone calls were received by the Crime Stoppers.

¶10. McBride's body was found in his living quarters at the Town House Motel. McBride died from a combination of blunt force injuries to the head and neck caused by numerous blows to the head and back of the neck and exsanguination from the injuries to his face and neck.

¶11. While Burns was in jail in Lee County, he began corresponding with a female prisoner, Contina Kohlheim. In the letters Burns sent Kohlheim, he talks about killing a man. "Look about the guy I killed, me and Phillip were dealing with a lot of dope and Phillip was giving our dope to this guy. He owed us $58, 000. I told Phillip to ask him one more time to pay us but he never did. So that night we went to the town house and I killed his ass." In the other letter Burns sent Kohlheim, he wrote, "I took a man's life now I'm looking at the Death Penalty." Testimony at trial revealed that Burns was not charged with any other murder, and there had been no other murders at the Town House Motel.

¶12. The letters were signed from "JoJo," or "Love JoJo." Burns gave the letters to a male trustee who in

turn gave them to the jailer who then gave them to a female trustee to deliver since the male prisoners were not allowed to go to the female side of the jail. Kohlheim turned the letters over to the police after being asked to do so.

¶13. Following a request by the district attorney's office, Officer Buddy Bell obtained a handwriting sample from Burns under the pretense of having him write down who would be allowed to visit him in jail. A comparison was then made between the letters written to Kohlheim and the known writing sample of Burns. The state's expert determined that there was a strong probability that the signatures on both letters were Burns'. He further determined that the content of both letters was probably written by Burns. There was also a fingerprint analysis done on the letters. Burns' fingerprints were found on both letters obtained from Tina Kohlheim.

ANALYSIS

### I. THE COURT ERRED BY FAILING TO GRANT REQUESTED PRELIMINARY HEARING.

¶14. Burns first alleges that he was denied a "valuable right" when he was denied a preliminary hearing prior to his indictment. After a hearing on the matter, the justice court judge determined that Burns was not entitled to a preliminary hearing because the matter had already been presented to the Lee County Grand Jury. In his brief, Burns argues that he had not been served with capias and did not know whether he had actually been indicted. The judge reserved his ruling until he could rule in writing. Judge Carr's written ruling stated that while there had not been a formal report of the indictment, he had evidence that Burns had been indicted by the Lee County Grand Jury. The record reflects that the Lee County Grand Jury returned a true bill against Burns on December 13, 1995, and Burns requested a preliminary hearing by Motion dated November 9, 1995.

¶15. This Court held, in *Mayfield v. State*, 612 So. 2d 1120 (Miss. 1992), that once a defendant has been indicted by a grand jury, the right to a preliminary hearing is deemed waived. *Id.* at 1129. This Court further stated in *Mayfield* that "the fundamental purpose of a preliminary hearing is to 'determine whether there is probable cause to believe that an offense has been committed and whether the defendant committed it.'" *Id.* (*quoting Avery v. State*, 555 So. 2d 1039, 1046 (Miss. 1990)(Roy Noble Lee, C.J., dissenting in part)).

¶16. Burns argues in his brief that his case is distinguishable from *Mayfield* because in *Mayfield*, the motion for a preliminary hearing was filed seven months after he was indicted. In the case *sub judice*, Burns moved for a preliminary hearing approximately one month before he was formally indicted by the Grand Jury.

¶17. The justice court judge conducted a partial preliminary hearing in November, 1995 which he aborted upon receiving an oral report that an indictment had been returned against Burns. The justice court judge clearly had no basis for aborting the preliminary hearing based upon a report of an indictment which had never been served or filed.

¶18. Burns sought to have the circuit court correct the justice court error after his indictment. The circuit court declined to do so on the basis that Burns had failed to show any prejudice in not having been afforded a preliminary hearing.

¶19. We are in agreement with the trial court. Although the justice court judge had no basis for aborting the preliminary hearing, the trial court did not abuse its discretion in determining that the error was harmless.

## II. THE COURT ERRED FAILING TO HAVE ENTIRE PROCEEDINGS RECORDED.

¶20. Burns' next assignment of error alleges that the failure of the trial court to record the entire proceedings including bench conferences is reversible error. Burns filed a pre-trial motion requesting that all hearings be recorded whether pre-trial hearings, in open court, bench conferences or conferences in chambers. The trial judge granted Burns' motion. Appellant argues that the absence of complete recordings violates his right of a record for the purpose of an appeal. In his brief, Burns fails to cite any specific instances of unrecorded or off-the-record proceedings.

¶21. The State correctly responds that nothing of substance was omitted from the record, that the record is sufficiently complete, and that a full appellate review can be made on the present state of the record. The State also submits that approximately twenty-four bench conferences were held without the benefit of the court reporter. The majority of these proceedings concerned administrative matters and no rulings of the court were made. Finally, the State contends that at no point in the proceedings did counsel for Burns object to the court reporter not recording these conferences.

¶22. Burns cites this Court's decision in ***Davis v. State***, 684 So. 2d 643, 651 (Miss. 1996) which stands for the proposition that trial courts should "ensure that every word is transcribed stating, '[W]e direct without equivocation that court reporters should never fail to preserve for record at-the-bench or chambers conferences following objections. . . The trial judge is responsible to enforce this directive.'" ***Id.*** (*quoting* ***Suan v. State***, 511 So. 2d 144, 147 (Miss. 1987)). ***Davis*** also states, "[h]owever, 'it is the appellant's burden to furnish the record.'" ***Id.*** (*quoting* ***Goodson v. State***, 566 So. 2d 1142, 1153 (Miss.1990) (designating the record on appeal turns on wishes of counsel)). However, in the case *sub judice* many of the instances in the record of bench conferences were not as a result of objections. Also in ***Davis***, this Court further found, "Davis failed to designate this portion of the record for purposes of appeal, and failed to show or attempt to show that he was prejudiced as a result, in that the loss of information would have revealed a violation of Davis's rights during jury selection." ***Id.*** The case at bar presents the same issue. Burns fails to state how he was prejudiced in any way by the failure to record the **entire** proceedings.

¶23. Burns further relies on ***Walker v. State***, 671 So. 2d 581 (Miss. 1995) where a majority of this Court found that "none of these unrecorded discussions prejudiced Walker's ability to appeal his case." ***Id***. at 620. This Court has said "it is the duty of the appellant to present a record of the trial sufficient to show that the error of which he complains on appeal has occurred and, further, the error was timely and properly preserved."***Doby v. State***, 557 So. 2d 533, 536 n. 2 (Miss. 1990). Relying on the proposition in ***Doby***, this Court in ***Thorson v. State***, 653 So. 2d 876 (Miss. 1994) found that because defendant failed to object at trial as to the trial court's failure to preserve a record of bench conferences, this issue did not warrant a finding of reversible error. ***Id.*** at 895. In ***Thorson***, this Court said:

> While defense counsel filed a motion June 23, 1987, to require the transcription of all proceedings at the bench outside the presence of the jury, the record shows that counsel participated in unrecorded conferences without calling it to the court's attention, or making any contemporaneous request at the time to have comments made a part of the record. It is in poor grace for counsel to participate without objection in unrecorded bench conferences and complain for the first time on appeal. We find no

error here.

*Id.* (*citing Doby,* 557 So. 2d at 536).

¶24. The issue now before this Court is almost the exact same issue presented in *Thorson* and discussed above. In both the case at bar and in *Thorson,* the defendant filed a motion requesting that the proceedings be recorded in its entirety and in both instances the trial judge granted the motion. In both cases, also, counsel for the defendant participated in bench conferences willingly without requesting that they be recorded or even calling it to the court's attention. This Court finds no distinction between the present case and *Thorson*. Therefore, this issue is without merit.

¶25. After a thorough review of the record in this case, we determine that the subject of the discussions as well as the outcome of those discussions was clear. When taken in the context in which they arose, the reason for the discussions was apparent. Burns raises no issue on appeal in which he argues that there is an insufficient record to adequately pursue his appeal. Therefore, the argument presented by Burns in his brief, is insufficient to establish a valid claim of an incomplete record.

¶26. This Court does note for the future, however, that when a trial judge grants a motion to have all proceedings recorded, it becomes at least partially the responsibility of the granting court to do everything possible to ensure the court reporter complies with the order. Without overruling any previous law issued by this Court providing that it is the responsibility of the appellant to ensure that there is a proper record for appeal, we admonish the trial courts of our State to assist in this endeavor.

### III. BURNS WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A RIGHT TO A FAIR TRIAL BY THE COURT'S DENIAL OF BURNS' REQUEST FOR A CONTINUANCE.

¶27. Burns next contends that because he was not granted a continuance, he was denied his right to a fair trial. Burns argues that State's witness, Jeff Hale, the brother of Burns' co-defendant was a surprise witness who the defendant did not know would be called until ten days before trial. Burns alleges that he had no knowledge of Jeff Hale's testimony regarding the trip to Tunica and/or spending the money allegedly stolen by his brother, Phillip Hale and Burns. Burns finally argues that defense counsel was not prepared to meet the challenge of the testimony of Jeff Hale.

¶28. The State submits that the prosecution properly submitted its discovery and as such no error occurred. The prosecution made the information pertaining to Jeff Hale's testimony regarding the trip to Tunica available to the defendant as soon as they received it, according to the Rules of Evidence. Further, the defendant was aware that Jeff Hale would be called as a witness upon receipt of the initial discovery in this case. The defendant, however, "had no reason to believe they needed to make any in-depth investigation of his past or any investigation of his connection with the crime of the co-defendant of the defendant and have not done so." The trial judge denied the motion for a continuance stating, "[y]ou've got a week from today before we start picking a jury from this morning. You've got an investigator. Get to work. If you want to interview him, interview him. The State has a continuing obligation to supplement discovery just like the defendant does."

¶29. This Court held in *Walker* that "the decision whether to grant or deny a continuance is a matter left to the sound discretion of the trial court. Unless manifest injustice is evident from the denial of a continuance,

this Court will not reverse." **Walker**, 671 So. 2d at 592 (*citing* **Johnson v. State**, 631 So. 2d 185, 189 (Miss. 1994) (*citing* **Wallace v. State**, 607 So. 2d 1184, 1190 (Miss. 1992); **Morris v. State**, 595 So. 2d 840, 844 (Miss. 1991); **Fisher v. State**, 532 So. 2d 992, 998 (Miss. 1988))). "'[T]he question of whether defendant had a reasonable opportunity to prepare to confront the State's evidence at trial depends upon the particular facts and circumstances of each case.'" **Id**. (*quoting* **Traylor v. State**, 582 So. 2d 1003, 1006 (Miss. 1991) (*citing* **Reuben v. State**, 517 So. 2d 1383 (Miss. 1987))).

¶30. Counsel for the defendant had sufficient time, at least a week, in which to interview Jeff Hale in order to prepare Burns' defense. Burns was aware of the identity of Jeff Hale, as well as the State's intention to call him as a witness, eight months before the trial began.

¶31. This Court will not reverse absent a showing that Burns suffered injury as a result of the refused continuance. Burns has failed to offer any evidence of injury and thus this issue is without merit.

## IV. THE COURT ERRED IN FAILING TO QUASH THE INDICTMENT

¶32. Burns next contends that the trial court erred in failing to quash the indictment due to the fact that the indictment fails to set out the proper elements of the underlying crime of armed robbery.

¶33. In addressing this issue in **Mackbee v. State**, we said,

> On the merits, Mackbee's argument still fails because the indictment further read, "contrary to and in violation of § 97-3-19(2)(e) of the Mississippi Code of 1972," which is the statutory provision for capital murder. Thus, the indictment was in compliance with § 99-17-20. See, **Bullock v. State**, 391 So. 2d 601, 606 (Miss. 1981); **Bell v. State**, 360 So. 2d 1206, 1208-09 (Miss. 1978). This issue lacks merit.

**Mackbee v. State**, 575 So. 2d 16, 35 (Miss. 1990).

¶34. The issue now before the Court is identical to the issue raised in **Mackbee**. Burns' indictment contained the provision of the Mississippi Code he violated, the capital murder provision. Burns was indicted for capital murder while in the commission of armed robbery. He had adequate notice of the crime charged such that he would have been able to present a well prepared defense. There is no Mississippi case law that requires the indictment to list the elements of the underlying offense charged in a capital murder indictment when the underlying offense is armed robbery.

¶35. We find that since Burns was indicted with the underlying offense of armed robbery, and the indictment included the provision comprising a charge of capital murder, this issue lacks merit.

## V. SUFFICIENT EVIDENCE WAS NOT PRESENTED TO CONVICT BURNS ON THE INDICTED CHARGE.

¶36. Burns fifth assignment of error alleges that the prosecution failed to prove the essential elements of armed robbery. In this assignment of error, Burns challenges the sufficiency of the State's evidence. He contends that the prosecution failed to prove he had the requisite intent to commit armed robbery.

¶37. The State relies on this Court's holding in **Voyles v. State**, 362 So. 2d 1236, 1243 (Miss. 1978) where this Court held that the intent to rob may be shown by the acts of the person involved as well as the

circumstances surrounding such actions. The intent to rob and/or murder need not be express. By Phillip Hale's own admission, he and Burns intended to rob Melvin McBride.

¶38. The standard of review in reviewing issues of sufficiency of the evidence was set out by this Court in **McFee v. State**, 511 So. 2d 130, 133-34 (Miss. 1987). The State asserts that based on **McFee**, the evidence was sufficient to convict Burns. In that case, this Court said:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See, e.g., **Gavin v. State,** 473 So. 2d 952, 956 (Miss. 1985); **May v. State,** 460 So. 2d 778, 781 (Miss. 1984).

*Id.*

¶39. The facts, as set out in detail above, along with all the other evidence support the jury's verdict sufficiently. This assignment of error is without merit.

### VI. THE COURT ERRED IN ALLOWING THE INTRODUCTION OF THE EXEMPLARS WHERE THE ITEMS WERE TAKEN IN VIOLATION OF BURNS' RIGHTS UNDER THE FOURTH, FIFTH, AND SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

¶40. In his next assignment of error Burns alleges that his Fourth, Fifth and Sixth Amendment constitutional rights were violated when, over his objection, the trial judge allowed writing exemplars taken from Burns without his knowledge to come into evidence.

¶41. Counsel for Burns argues in his brief that because Burns did not sign a consent form to have the handwriting samples seized from him, his Fourth Amendment right against unlawful seizure was violated. He further argues that the taking of the exemplars without warning of self-incrimination is a violation of his Fifth Amendment right against self-incrimination. Finally, Burns claims that he was denied his Sixth Amendment right to effective assistance of counsel at trial.

¶42. Following a request by the district attorney's office, Officer Buddy Bell, jail administrator for the Tupelo Police Department, asked Burns to write down who should be allowed to visit him on visiting days. The record makes it clear that the real purpose of Bell's request was to obtain for the district attorney a known writing sample against which to compare the letters Burns wrote to Contina Kohlheim. Bell testified that it was not common for the jail to request written confirmation of an inmate's visitors. However, Bell further testified that he believed that if he had approached Burns requesting a handwriting sample or if the district attorney's office had first obtained a court order to force Burns to give a handwriting sample, he

would not have cooperated.

¶43. This particular issue is relatively new to Mississippi. However, the United States Supreme Court and various State Supreme Courts have addressed this same issue. The taking of handwriting exemplars is treated in much the same manner as blood samples, hair samples, etc. in that it is not a critical stage requiring presence of counsel and that there is no privacy expectation in handwriting samples taken from a prisoner.

¶44. The trial judge in the case at bar held a hearing outside the presence of the jury in order to rule on the defendant's motion to suppress. After hearing arguments of counsel for the defendant and the prosecution, the judge determined that:

> he has no expectations -- legitimate expectation of privacy in his handwriting under the 4th amendment. And the court finds that the 5th amendment doesn't apply either to this type of evidence, handwriting exemplar. It is well-established law that the 5th amendment privilege against self-incrimination applies only to evidence of a testimonial or communicative nature and does not protect a suspect from being compelled to produce real or physical evidence. This law has most recently been stated last year in United States versus Timothy J. McVey, who is charged in the bombing in Oklahoma City.

> For these reasons, the motion to suppress shall be and the same is hereby overruled. Ready to proceed?

¶45. The State argues that the decision to admit or exclude evidence is one left to the discretion of the trial judge. Relying on this Court's ruling in *Fisher v. State*, 690 So. 2d 268 (Miss. 1996), the State argues that a "trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Id.* at 274 (*citing Shearer v. State*, 423 So. 2d 824, 826 (Miss. 1982)). The State further contends that Burns failed to show reversible error relying on *Branch v. State*, 347 So. 2d 957 (Miss. 1977), where this Court held that there "is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." *Id.* at 958.

### Fourth Amendment

¶46. Burns argues that because the handwriting exemplars were obtained through trickery, his Fourth Amendment rights were violated. The United States Supreme Court has held that "[h]andwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *United States v. Mara*, 410 U.S. 19, 21 (1973).

¶47. In *Mara*, the petitioner claimed that his Fourth Amendment rights were violated when as a result of a grand jury directive, he was forced to furnish samples of his handwriting and printing. The Supreme Court, affirming the District Court, held, "[t]he specific and narrowly drawn directive requiring the witness to furnish a specimen of his handwriting violated no legitimate Fourth Amendment interest." *Id.* at 22.

¶48. In the case sub judice, Officer Bell asked Burns to submit a handwriting sample. Burns argues that he was tricked. While we do not condone acts of trickery committed by the State in criminal cases, we find that there is no privacy interest in handwriting. Burns' handwriting was obtained for the narrowly tailored purpose of comparing a known sample of his writing to the letters that the district attorney believed he

wrote to Kohlheim - letters in which he discusses killing McBride.

¶49. In his brief, Burns briefly focuses on the fact that the exemplar was obtained by false pretenses. Again, if there is no Fourth Amendment privacy expectation in handwriting, there is no constitutional violation involved in not being entirely truthful in obtaining it. The United States Supreme Court said in *Moran v. Burbine*, 475 U.S. 412 (1986), that "[b]ut we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Officer Bell was under no constitutional duty to inform Burns why he wanted the handwriting exemplar. Thus this Court finds that if Officer Bell believed that telling Burns why the handwriting was being taken would have caused him to refuse or at the very least alter his writing style, his Fourth Amendment rights were not violated.

¶50. This Court recognizes that the handwriting exemplars could have been obtained by court order; and although we doubt that trickery was the best way to obtain said exemplars, we cannot ignore the findings of the United States Supreme Court that there is no Fourth Amendment privacy expectation in handwriting exemplars. We, therefore conclude, that when there is no expectation of privacy concern, using trickery as a method for obtaining handwriting exemplars is at worst bad practice.

### Fifth Amendment

¶51. Burns also argues that the taking of a handwriting exemplar without first warning him of the fact that it may incriminate him forced him to be a witness against himself and as a result violated his Fifth Amendment rights.

¶52. The United States Supreme Court has long since ruled on the Fifth Amendment argument Burns now presents to this Court in *United States v. Wade*. "A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection."*Gilbert v. California,* 388 U.S. 263, 266-67 (1967) (*quoting* *United States v. Wade*, 388 U. S. 218, 222-23 (1967)).

¶53. The Supreme Court further said in *Gilbert* that:

> [t]he taking of exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of 'real or physical evidence.' ***.' *Schmerber v. State of California* 384 U.S. 757, 763-764, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege.

*Gilbert*, 388 U.S. at 266. Applying this reasoning to the case at bar, Burns argument that his Fifth Amendment rights were violated is without merit.

¶54. Furthermore, this Court adopted the Supreme Court's reasoning in *Gilbert* and *Schmerber* in *Baylor v. State*, 246 So. 2d 516 (Miss. 1971) finding "[t]he Fifth Amendment privilege against self-incrimination protects an accused from being compelled to testify against himself, that is, to provide evidence of a testimonial or communicative nature, but does not extend to the securing of real or physical evidence." *Id*. at

519 (*citing* **Gilbert v. California**, 388 U.S. 263 (1967)). Burns' handwriting exemplars were not "of a testimonial or communicative nature," but rather were taken for the purpose of comparing them to letters Burns wrote to Kohlheim.

¶55. Burns was required to use his handwriting as a means of identifying him not as a compelled self-incrimination. Burns argues against the taking of the handwriting exemplar and its subsequent allowance into evidence, not against the content of the writing. Therefore, we find that Burns' Fifth Amendments rights were in no way violated.

## Sixth Amendment

¶56. Finally, Burns argues that he was denied his Sixth Amendment right to counsel at the time the exemplars were taken. He claims that because his counsel was not present, "he was deprived of the assistance of counsel for his defense..."

¶57. The United States Supreme Court also addressed this issue in **Gilbert**, *supra.* In holding that the taking of handwriting exemplars was not a critical stage the Court said:

> [t]he taking of the exemplars was not a 'critical' stage of the criminal proceedings entitling petitioner to the assistance of counsel.... If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, 'the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts.' **United States v. Wade**, *supra,* 388 U.S., at 227-228, 87 S.Ct., at 1932-1933.

**Gilbert**, 388 U.S. at 267.

¶58. The holding in **Gilbert** focuses on the right of confrontation at trial. Counsel for Burns conducted direct examination of Officer Buddy Bell, discussed *supra,* after calling him as a witness on his motion to suppress the handwriting exemplars. Also, counsel for Burns conducted a cross-examination of Ted Burkes, the State's (handwriting) expert. Following the reasoning of **Gilbert**, Burns' Sixth Amendment right to counsel was not violated.

¶59. While this Court has not addressed this specific issue, similar issues have been addressed regarding when the right to counsel attaches. We have said that failure to provide counsel at non-critical stages such as scientific analysis of fingerprints, blood samples, hair and clothing is not a constitutional violation. *See* **Baylor**, 246 So. 2d at 519. We have reiterated the same holding several times since **Baylor**. *See, e.g.,* **Magee v. State**, 542 So. 2d 228 (Miss. 1989)(photographic lineup not critical stage); **Newton v. State**, 321 So. 2d 298 (Miss. 1975)(fingerprinting not critical stage); **Ewing v. State**, 300 So. 2d 916 (Miss. 1974) (chemical test for intoxication not critical stage).

¶60. Critical stage has been defined by this Court as "any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial." **Ormond v. State**, 599 So. 2d 951, 956 (Miss. 1992) (*citing* **Coleman v. State**, 592 So. 2d 517, 520 (Miss. 1991)). **Ormond** dictates that as long as there is an opportunity for counsel to cross-examine at trial or otherwise confront witnesses, there is no constitutional violation for not having counsel present during non-critical

stages. Therefore, because counsel for Burns had the opportunity to cross-examine witnesses in regard to the handwriting exemplar, as well as, the letters written to Kohlheim to which they were compared, he was able to "avert prejudice at trial" thus meeting the standard set forth in *Ormond*.

¶61. It is clear to us that there has not been a violation of Burns' Fourth, Fifth or Sixth Amendment rights. There is no privacy expectation in handwriting, thus no Fourth Amendment violation. The taking of a handwriting exemplar is not communicative and does not force the defendant to incriminate himself. It is nothing more than a method of identification, thus there has been no Fifth Amendment violation. Finally, because the taking of the handwriting exemplar was not a critical stage, there was no right to have counsel present; therefore, Burns did not suffer a Sixth Amendment constitutional violation. For these reasons, this issue is without merit.

### VII. THE COURT ERRED IN ALLOWING THE LETTERS OVER THE OBJECTION OF THE DEFENDANT WHERE THE PROSECUTION DID NOT LAY THE PROPER FOUNDATION FOR INTRODUCTION AND DID NOT REQUIRE THE PROSECUTION TO SATISFY THE "CHAIN OF CUSTODY" OF SAID LETTERS.

¶62. Burns next contends that the trial judge erred in admitting two letters allegedly written by Burns into evidence. Burns argues that the letters written to Contina Kohlheim in which he allegedly writes about killing a man at the Town House Motel presumed to be McBride were not authenticated. Burns contends that the proper foundation was not laid, there were no witnesses to connect the chain of custody and the letters at issue did not fall within any recognized exception of the hearsay rule.

### Foundation and Authenticity

¶63. The State argues that there were four witnesses who testified as to the authenticity of the letters - Willie Agnew, a male trustee at the jail, testified that he received letters from Burns that were to be delivered to Contina Kohlheim; Officer Bell, the jail administrator, testified that he took known writing samples from Burns; Ted Burkes, a document examiner with the State Crime Lab, testified that the letters written to Kohlheim were "probably prepared" by Burns and that a comparison of the signatures on the letters and the known sample revealed a "strong probability" that they were written by the same person; Contina Kohlheim testified that she received letters she believed to be written by Burns while they were both incarcerated in the Tupelo City Jail; and Kenneth Gill, a fingerprint examiner with the Mississippi Crime Lab, testified that Burns' fingerprints were on the letters received from Kohlheim purportedly written by Burns.

¶64. This Court has held that "[r]elevancy and admissibility of evidence are largely within the discretion of the trial court and this Court will reverse only where that discretion has been abused." *Hentz v. State*, 542 So. 2d 914, 917 (Miss. 1989) (*citing Burt v. State*, 493 So. 2d 1325, 1326 (Miss. 1986); *Carter v. State*, 310 So. 2d 271, 273 (Miss. 1975); and M.R.E. 103(a)). In *Hentz*, this Court further said that the admissibility of the letters only becomes a concern once they have been authenticated. *Id.* "A person's handwriting may be authenticated by a handwriting expert or by a lay witness with a prior familiarity with that person's handwriting." *Id.* (*citing Henry v. State*, 484 So. 2d 1012, 1014 (Miss. 1986); and M.R.E. 901(b)(2)). Rule 901 reads in its pertinent part as follows:

### Rule 901. Requirement of Authentication Or Identification

**(a) General Provision.** The requirement of authentication or identification as a condition precedent

to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustration.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of Witness With Knowledge.* Testimony that a matter is what it is claimed to be.

(2) *Non-expert Opinion on Handwriting*. Non-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

(3) *Comparison by Trier or Expert Witness*. Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

\*\*\*

(10) *Other Methods.* Any method of authentication or identification provided by the Mississippi Supreme Court or by the Constitution of Mississippi.

¶65. In the case *sub judice*, the State was in full compliance with the requirements set out by this Court in ***Hentz***. Ted Burkes, the State's handwriting expert, properly authenticated the letters by comparing them to the known writing exemplar obtained from Burns by Officer Bell, the jail administrator. Furthermore, Kenneth Gill, a fingerprint expert with the Mississippi Crime Lab testified that Burns' fingerprints were found on the letters thus linking Burns to the letters. The only way Burns' prints could have been found on the letters is for him to have handled them at some point in time. The chain of custody of the letters was clearly established, as will be discussed next, such that the only time Burns could have left fingerprints on the letters was before Willie Agnew, the male trustee, ever received them from him. Burns had no opportunity to handle the letters after they were received by Agnew.

### Chain of Custody

¶66. Here, Burns argues that the State never "connected the dots." He argues that the State failed to present testimony sufficient to establish that Burns was the author of the letters because it never offered testimony from anybody who actually saw Burns write the letters. Thus, the letter exhibits should have been excluded.

¶67. The State first argues that Burns failed to object to the chain of custody in the court below. The State cites ***Conner v. State***, 632 So. 2d 1239 (Miss. 1993), to support this argument. In ***Conner,*** this Court held that an objection on one or more specific grounds constitutes a waiver of all other grounds. ***Id***. at 1255 (*citing **Stringer v. State***, 279 So. 2d 156, 158 (Miss. 1973)). *See also **Brown v. State***, 682 So. 2d 340, 350 (Miss. 1996). It has long been the finding of this Court that "an objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial." ***Brown,*** 682 So. 2d at 350 (*citing **McGarrh v. State***, 249 Miss. 247, 276, 148 So. 2d 494, 506 (1963)). This claim is procedurally barred.

¶68. The procedural bar notwithstanding, we will address the merits of this issue. "Whether a chain of custody has been properly established is left to the discretion of the trial court." ***Id***. (*citing **Nalls v. State***, 651 So. 2d 1074 (Miss. 1995); ***Wells v. State***, 604 So. 2d 271 (Miss. 1992)). The trial judge was careful to determine that adequate foundation had been laid before allowing the letters to come into evidence. The

judge allowed the letters to come in only after a thorough examination and the testimonies of both the documents examiner who testified that there was a strong probability that the signatures on the letters matched the signature on the known sample, and the fingerprint expert who unequivocally stated that Burns' fingerprints were on the letters.

¶69. The trial judge exercised his sound discretion in allowing these letters into evidence. "[U]nless this judicial discretion has been so abused as to be prejudicial to the defendant, this Court will not reverse the rulings of the trial court." *Lambert v. State*, 462 So. 2d 308, 312 (Miss. 1984) (*quoting Nix v. State*, 276 So. 2d 652, 653 (Miss. 1973)).

## Hearsay

¶70. Finally, Burns claims that the content of the letters was hearsay not within any recognized exception. Burns claims that he was denied his right to cross-examine these statements and as such the hearsay rule was violated.

¶71. The State argues that the letters were admissions and not hearsay. The letters were not written by a third party and offered into evidence against Burns. "[A]dmissions of a party come in as substantive evidence of the facts admitted." *Neely v. State ex rel. Tate County*, 628 So. 2d 1376, 1380 (Miss. 1993).

¶72. Rule 801(d)(2) of the Mississippi Rules of Evidence provides as follows:

> *Admission by Party-Opponent*. The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Miss.R.Evid. 801(d)(2). This Court has said the admissions by a party-opponent are not hearsay. *Gayten v. State*, 595 So. 2d 409, 415 (Miss. 1992). The statements contained in the letters such as "Look, about the guy I killed, me and Phillip were dealing a lot - - a lot of dope and Phillip was giving our dope up front to this guy who had owed us $58,000. I told Phillip to ask him one more time to pay us, but he never did, so that night we went to the Town House and I killed his ass.", and "I took a man's life. Now I'm looking at the death penalty," are admissions by a party-opponent.

¶73. It was within the discretion of the trial judge to determine whether there was sufficient evidence to determine whether Burns wrote the letters. *Gayten v. State*, 595 So. 2d 409, 415-16 (Miss. 1992); Miss.R.Evid. 104(b). Upon a determination that Burns wrote the letters, they are admissions. As discussed above, there was adequate evidence to link Burns to the letters. The trial judge did not abuse his discretion in allowing the letters to be admitted into evidence.

¶74. We find that the State laid the proper foundation. There were numerous witnesses presented by the State including a handwriting expert and a fingerprint expert who testified that there was a strong probability that the signatures were the same and that Burns' fingerprints were on the letters. Also, the chain of custody was established by virtue of the fact that in order for Burns' fingerprints to be on the letters he had to have them in his possession originally because there was no question that they were not returned to him at the jail

after Contina Kohlheim received them. Finally, the hearsay argument is wholly without merit. The letters are an admission by a party-opponent. For these reasons, this issue is without merit.

### VIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT, BOTH AT THE CLOSE OF THE STATE'S CASE AND AT THE CLOSE OF THE ENTIRE CASE, AND IN DENYING MOTION FOR NEW TRIAL.

¶75. This issue is similar to Issue V above in that it challenges the sufficiency of the evidence. As stated *supra*, considering all evidence in the light most consistent with the verdict, evidence presented was sufficient to support the verdict. *See **McFee***, 511 So. 2d at 133-34.

¶76. The facts, as discussed in detail above, reveal that there was sufficient evidence on which to convict Burns for capital murder. Phillip Hale, the co-defendant, testified that he and Burns agreed to rob McBride. He left the room and when he returned, Burns was stabbing McBride. Phillip Hale testified that Burns said he killed McBride because he did not want any witnesses. Jeff Hale also testified that both Phillip and Burns recounted the robbery and murder to him shortly after the murder. Further, Janie Taylor testified that immediately after the murder both Burns and Phillip Hale returned to her trailer where Burns told her that he had just killed the man at the Town House Motel.

¶77. For the reasons discussed above and in Issue V, *supra* we find that the trial judge was correct in denying the motion for directed verdict and as such this issue is without merit.

### IX. THE COURT ERRED IN ALLOWING THE STATE TO MAKE PREJUDICIAL REFERENCE TO PRIOR CRIMES IN VIOLATION OF M.R.E. RULE 404.

¶78. In his next assignment of error, Burns alleges that it was error for the State to make reference to prior crimes committed by Burns. In the State's direct examination of Phillip Hale, he testified that Burns killed McBride because he "did not want to go back to the pen." Burns argues his motion for mistrial should have been granted. The exchange to which Burns refers as reflected in the record follows:

Q. Why was it that - - what did JoJo say about stabbing him, why he stabbed him?

A. Stabbed me?

Q. No, why he stabbed Mike McBride?

A. Well, he said if he - - he could turn us in.

Q. Okay.

A. And he didn't want to go back to the pen.

Q. Have you talked with JoJo about this over the - - well, over the last - - over the next year? Did y'all talk about it? Did he talk about stabbing Mike McBride at any time?

A. No, sir.

MR. YOUNG: We have no further questions at this time, your Honor.

THE COURT: We're going to take a recess before cross-examination. Remember my instructions.

Don't discuss the case. About a 15 minutes [sic] recess, will probably be your last one of the day. You may be excused.

(THE JURY IS EXCUSED FROM THE COURTROOM.)

MR. ELLIS: Your Honor, I would like to go on the record briefly.

THE COURT: All right. I'll hear you.

MR. ELLIS: Your Honor, Mr. Hale, in the course of answering the last question, mentioned a prior incarceration by the Defendant. I admit it's very brief; I think his words were, "He didn't want to go back to the pen." There has been no evidence placed in - - no evidence of character placed in, and I think it would be improper at this time. I move for a mistrial. Barring that, I would ask that the State admonish Mr. Hale and any future witnesses that the mention of Mr. Burns' prior criminal record is not proper.

THE COURT: I understand that.

MR. ELLIS: I mean, I don't - - I honestly, Judge, don't think the jury may have placed much importance in it, but it was mentioned, and now it places the defense in a position of having to explain possibly.

THE COURT: Do you want me to direct them to disregard that statement?

MR. ELLIS: No, your Honor. I don't think that helps any. I - -

THE COURT: All right. The - - the question was asked and I had heard it - - a half of the response earlier, when Mr. Hale testified that Mr. Kingsley[1] stated that he killed him because he didn't want to be identified later. And the question was asked again and in addition to saying he didn't want to be identified, he said that Mr. Burns said he didn't want to go to the pen. This, according to the testimony that I heard, was a statement that was allegedly made while all this was going on, by Defendant Burns, that this witness has testified to. Your motion for mistrial is overruled.

MR. ELLIS: Yes, your Honor. I would ask that the State please instruct their witnesses about that though, if - - I don't want careless words.

THE COURT: I understand. I've already ruled on it on an earlier motion, but on the guilt phase, we will not go into anything dealing with defendant's record.

MR. YOUNG: Your Honor, one thing, if I could add, I really didn't mean to go into that. **But then on the other hand, this is something the Defendant said at the time he was killing McBride, Mr. McBride, and it is also part of the motive for him killing the man, so that he couldn't be identified and would have to go back to the penitentiary.**

The State argues that whether or not the prosecution intended to elicit this testimony from Hale, it was admissible. Rule 404(b) of the Mississippi Rules of Evidence reads as follows:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may,

however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

404(b) Miss.R.Evid.

¶79. The State asserts that the information that came out during Phillip Hale's testimony was admissible to show motive - that Burns killed McBride so that he could not be identified and be sent back to the penitentiary. We agree. It is clea r that Burns' motive for killing McBride was to do away with any witnesses to the crime.

¶80. In *Mack v. State*, we warned prosecutors and trial courts to approach evidence of other crimes with caution. *Snelson v. State*, 704 So. 2d 452, 455 (Miss. 1997) (*citing Mack v. State*, 650 So. 2d 1289, 1313 (Miss. 1994)). However, we went on to say in *Mack* that "because of the close connection of a specific monetary objective and because of the overwhelming evidence of guilt, we conclude that the error in admitting... evidence [showing that the defendant purchased crack cocaine after robbing and killing Fulton] if any, is harmless beyond a reasonable doubt." *Id.* at 1313. We find that because of the close connection between Burns' objective and McBride's death, admitting the evidence was at worst harmless error.

¶81. In the case *sub judice*, the trial judge asked the defense counsel if he would like the jury admonished to disregard the statement to which he answered no. Then, the trial judge refused to grant a mistrial based on his reasoning that the statement was "a statement that was allegedly made while all this was going on, by Defendant Burns." Secondly, even if the judge's decision to deny the motion for mistrial could be taken as admitting the evidence, this Court finds that the judge determined that the probative value of the fact that McBride was murdered so that Burns would not have to go back to the "pen" outweighed the potential for prejudice against the defendant. The judge determined that there was "ample evidence showing that the primary objective of Burns' actions was to prevent him from going back to the 'pen'." *See Snelson*, 704 So. 2d at 455.

¶82. Furthermore, counsel for defendant, as evidenced by the above exchange, was not too concerned about the testimony regarding the "pen". Counsel for the defendant even went so far as to state, "I honestly, Judge, don't think the jury may have placed much importance in it. ..." The trial judge asked him if he wanted an instruction issued to the jury to disregard the statement to which Mr. Ellis answered no. Mr. Ellis also did not want a limiting instruction informing the jury that it could not use the prior incarceration in determining Burns' guilt in the case at bar.

¶83. Moreover, this Court has said many times that evidence of prior crimes is admissible to show motive. *See generally Warren v. State*, 709 So. 2d 415 (Miss. 1998);*Hunt v. State*, 538 So. 2d 422 (Miss. 1989); *Jenkins v. State*, 507 So. 2d 89 (Miss. 1987); *Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994); *Smith v. State*, 499 So. 2d 750 (Miss. 1986); *Ballenger v. State,* 667 So. 2d 1242 (Miss. 1995)

¶84. In *McLemore*, we said that the "[r]easoning behind this rule is to protect against a jury convicting a defendant just because he has committed other crimes and not because the prosecution has proven that he is guilty of the crime for which he is accused. ... The exception to this rule would be where the evidence of the other crimes is admitted to show motive or intent and that these acts may have been done in furtherance of such motive or intent." *McLemore v. State*, 669 So. 2d 19, 22-23 (Miss. 1996).

¶85. "Rule 404(b), M.R.E., precludes evidence of other crimes, wrongs, or acts to show that the defendant acted in conformity therewith. However, if evidence of other crimes, wrongs, or acts is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it is admissible under M.R.E. 404(b)." *Parker v. State*, 606 So. 2d 1132, 1136-37 (Miss. 1992) (*citing Lewis v. State*, 573 So. 2d 719, 722 (Miss.1990); *Robinson v. State*, 497 So. 2d 440, 442 (Miss.1986)). Even evidence not admissible because prejudicial under Rule 403 may be admissible under Rule 404(b). *Jenkins v. State*, 507 So. 2d 89, 92 (Miss.1987).

¶86. Following the abundance of case law available on this issue, the evidence now before this Court for review was admissible to show motive. Burns felt he had to kill McBride to prevent his returning to the penitentiary. This issue is without merit.

### X. THE EVIDENCE PRESENTED PROVED TO BE INSUFFICIENT WHERE GREAT RELIANCE WAS PLACED ON UNCORROBORATED, INCREDIBLE TESTIMONY.

¶87. Burns' tenth assignment of error once again challenges the sufficiency of the evidence. Burns argues that the State relied on unbelievable and often inconsistent testimony from Phillip Hale, Jeff Hale and Janie Taylor. Burns further claims that these witnesses were inherently incredible.

¶88. Citing *Noe v. State* to support its proposition, the State argues that the court properly instructed the jury to weigh the evidence of alleged accomplices with great caution. "'The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity.'" *Noe v. State*, 616 So. 2d 298, 303 (Miss. 1993) (*quoting Jones v. State*, 381 So. 2d 983, 989 (Miss. 1990)). The jury who is "the sole judge of the weight and worth of the testimony as its proper function, had before it the duty to determine the evidence it would accept as true and that which it would reject as untrue." *Wilson v. State,* 234 So. 2d 303, 311-12 (Miss. 1970) (*citing Alexander v. State*, 251 Miss. 847, 171 So. 2d 517 (1965); *Bond v. State*, 249 Miss. 352, 162 So. 2d 510 (1964)).

¶89. "As a general rule a trial judge should not hesitate to grant a cautionary instruction when the State is relying upon the testimony of co-conspirators." *Wheeler v. State*, 560 So. 2d 171, 173 (Miss. 1990) (*quoting Derden v. State*, 522 So. 2d 752, 754 (Miss. 1988)). Such was not the case here. The judge in the case *sub judice* instructed the jury "that the testimony of alleged accomplices should be weighed with great caution and the Jury may disbelieve their testimony all together, if they believe it untrue, the jury being the sole judge of the credibility of the witnesses." The judge properly issued the instruction. Therefore, this issue is without merit.

¶90. Reviewing the sufficiency of the evidence in the light most favorable to the verdict, there was sufficient evidence to convict Burns of capital murder. For these reasons, this issue is without merit.

### XI. THE TRIAL COURT ERRED IN ADMITTING UNNECESSARY AND GRUESOME AUTOPSY PHOTOGRAPHS INTO EVIDENCE.

¶91. In his eleventh assignment, Burns argues that the court below committed reversible error when it allowed unduly gruesome autopsy photographs into evidence. Burns alleges that the photographs were admitted solely to inflame the passions of the jury.

¶92. The State argues that the photographs were not unduly prejudicial but were highly probative. In

*McNeal v. State,* this Court cautioned trial courts to consider all the facts and circumstances surrounding the admission of inflammatory photographs. Specifically, the trial court must consider, (1) whether the proof is absolute or in doubt as to the identity of the guilty party, and, (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury. *McNeal v. State,* 551 So. 2d 151, 159 (Miss. 1989).

¶93. This Court has allowed photographs to show the different wounds to the victim, *Jenkins v. State,* 607 So. 2d 1171, 1175 (Miss. 1992), and in cases where they aided in the description of the circumstances of the murder and the corpse. *Westbrook v. State,* 658 So. 2d 847, 849 (Miss. 1995).

¶94. The photographs in question were autopsy photos, as well as, crime scene photos of the victim. Their probative value was that they accurately depicted the wounds suffered by McBride, which were stipulated to in the autopsy report prepared by Dr. Emily Ward, the state medical examiner at the time of McBride's death. Based on the broad discretion afforded the trial judge , the case law, and the pictures themselves, the trial judge did not abuse his discretion in admitting these photographs. This assignment of error is without merit.

### XII. THE DENIAL OF BURNS' RIGHT TO AN INDEPENDENT PSYCHOLOGIST EXPERT TO ASSIST HIS DEFENSE VIOLATED CONSTITUTIONAL RIGHTS.

¶95. Burns next maintains that the trial judge erred in denying him funds to hire an independent psychologist to assist his defense. In denying his motion for an independent psychiatrist, the trial judge found:

> THE COURT: Very well. Your motion is partly granted and partly denied. I will furnish you a handwriting expert. You have demonstrated the requisite need for that. However, with respect to the psychiatrist, based on the motion and statements made here in court, the Court does not feel that there is a showing having been made that would demonstrate the necessity of that expert. The record is silent and the motion is silent with respect to any mental problems this defendant may have experienced in the past, any irrational behavior between the defendant and defense counsel. For that reason - - those reasons I'm going to deny that portion of your motion as it relates to the psychiatrist. Anything further?

¶96. The State argues that counsel for Burns, in his motion for a psychiatrist, only stated that at the time the crime was committed, "Mr. Burns may have been diminished capacity to some extent." The State cites *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997), in support of the proposition that, "[d]etermination of whether the State must pay for an expert witness for an indigent defendant must be made on a case by case basis."

¶97. While there is no shortage of law on this issue, all of the cases previously decided by this Court rely on *Ake v. Oklahoma*, 470 U.S. 68 (1985). The United States Supreme Court said in *Ake*,

> [w]e therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for

the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

*Lanier v. State*, 533 So. 2d 473, 480-81 (Miss. 1988) (*quoting Ake*, 470 U.S. at 83). Counsel for Burns offers nothing more than "undeveloped assertions" that Burns needed an expert. There was never any evidence that Burns actually had any psychological problems, mental illness or would be a danger to society.

¶98. The Supreme Court has said that there is no due process violation in denying expert assistance where the defendant offered only undeveloped assertions that the expert would be beneficial. *See Caldwell v. Mississippi*, 472 U.S. 320 (1985). "Something more than 'undeveloped assertions that the requested assistance would be beneficial' is required." *Butler v. State*, 608 So. 2d 314, 321 (Miss. 1992) (*quoting Hansen v. State*, 592 So. 2d 114, 125 (Miss. 1991), *cert. denied*, 504 U.S. 921 (1992)).

¶99. Burns' motion for an independent psychiatrist was at best vague. Defense counsel never outlined the "specific cost, value and purpose of an expert or investigator" as required by this Court in *Harrison v. State*, 635 So. 2d 894, 900-02 (Miss. 1994). There was no indication whatsoever that Burns suffered from diminished capacity when the murder was committed other than empty assertions by his attorney. There was no reference to any potential incompetence regarding Burns' ability to stand trial. For these reasons, this issue is without merit.

### XIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A MANSLAUGHTER INSTRUCTION.

¶100. Burns' thirteenth assignment of error charges that the trial court erred in refusing to grant his request for a manslaughter instruction. Burns claims that a reasonable jury could have convicted him of manslaughter if it found that defendant was not guilty of armed robbery, but did find that Burns killed McBride without malice aforethought.

¶101. The State argues first that Burns failed to request a manslaughter instruction. Secondly it contends that Burns failed to object to the court's lesser included instruction of murder. Finally, the State argues that Burns did not include the failure to give a manslaughter instruction in his motion for a new trial.

¶102. The following exchange occurred immediately following the objections to the jury instructions:

> THE COURT: ...Either side desire any additional instructions than those I've indicated I'm going to give?
>
> MR. YOUNG: No, your Honor.
>
> THE COURT: Defendant?
>
> MR. ELLIS: No, your Honor.

The only reference to a lesser included offense instruction was offered by the State, and it was ultimately withdrawn by the State. The following exchange occurred:

> INSTRUCTION NO. P-1st-5: THE COURT: P-1st-5 was withdrawn by the State; is that correct?

MR. GEDDIE: I believe so, your Honor. Give me one second here.

THE COURT: Lesser included manslaughter.

MR. YOUNG: Yes, sir, it's withdrawn.

Finally, the State argues that there was absolutely "no evidence or reasonable inference presented [by the defendant] that would justify a manslaughter verdict."

¶103. This Court has addressed a very similar issue in *Griffin v. State*, 557 So. 2d 542, 549 (Miss. 1990) (holding that defendant convicted of capital murder while in the commission of a robbery was not entitled to a manslaughter instruction). The Court said in *Griffin* that "[t]his homicide having occurred during the course of a robbery, it was capital murder, regardless of the intent of Griffin." *Id*. In the case *sub judice*, Burns was engaged in the commission of robbery when McBride was killed. Thus, no manslaughter instruction was required to be given.

¶104. The record reveals that Burns never offered any mitigating evidence that would justify manslaughter rather than murder. There was nothing to indicate that this murder was done in the heat of passion. Because the burden to overcome the presumption of murder lies with the defendant, *Nicolaou v. State*, 534 So. 2d 168, 171-72 (Miss. 1988), and because Burns failed to meet this burden, this issue is without merit.

## XIV. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE UNDERLYING CRIME OF ROBBERY.

¶105. Burns next asserts that the trial court erred by failing to instruct the jury on the underlying crime of armed robbery. The State argues that P-1st-3A adequately instructed the jury on the elements of armed robbery.

¶106. The only objection made by Burns regarding this instruction was to the sufficiency of the evidence. Thus, the State argues that this issue is procedurally barred citing *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993) (holding that an objection on one or more specific grounds constitutes a waiver of all other grounds).

¶107. The procedural bar notwithstanding, this issue has no merit. The jury was adequately informed of the elements of armed robbery. Burns never argues otherwise. Rather the only argument counsel for Burns ever made was in reference to the sufficiency of the evidence. The sufficiency of the evidence is discussed at issue V, *supra*. We find that there is ample evidence to support Burns' intent to rob McBride. Further, the evidence supported Burns' conviction of capital murder while in the commission of armed robbery and as such, this issue is without merit.

### Sentencing Phase

## XV. THE COMMENTS MADE BY PROSECUTION AMOUNTED TO PROSECUTORIAL MISCONDUCT.

¶108. Burns next claims that comments made by the prosecution amounted to prosecutorial misconduct. Burns argues that the prosecution "injected remarks intended to inflame racial prejudice, made statements calculated to stir up the juror's emotions as to matters irrelevant to the case; and misstated the evidence

during closing arguments" in such a way as to prevent Burns from having a fair trial.

¶109. The State argues first that the record contains no objections to the challenged comments and as such this issue is procedurally barred. Further, the State argues that the comments by the prosecutor do not create unjust prejudice against Burns as this Court required in *Wells v. State*, 698 So. 2d 497, 506 (Miss. 1997). In *Wells*, this Court said "'whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.'" *Id.* (*quoting Davis v. State*, 530 So. 2d 694, 701 (Miss. 1988)).

¶110. Burns failed to specifically state which comments he deemed amounted to prosecutorial misconduct; therefore, we will address the comments in the order in which the State, in its brief, discussed them.

### The Use of Racial Epithets:

¶111. Burns contends that the State injected racial prejudice into the trial when it mentioned the letters Burns wrote to Kohlheim in which he referred to her as "My Nigga". The State contends the prosecution was attempting to rebut any mitigation by describing Burns' character in that he does not respect people in general. The passage to which Burns refers follows:

> [MR. YOUNG:]...Throughout these letters, it's nothing but hatred for his fellow man and woman. It talks about I'm a state inmate and that's my rights anyway. I hope this MF'er don't think I'm stupid for no means. In one part it says, I'm not mad at you anymore - this is his letter to Contina Kohlheim - it's hard to make me mad. You think he wasn't mad when he killed Mike McBride for no reason? Then to show he's proud of this, love you, JoJo, insane disciple, bragging. Plenty much love. My N-I-G-G-A, another word that shouldn't be in the English vocabulary, but another word of contempt, hatred and disrespect for mankind.

¶112. By failing to offer a contemporaneous objection or to raise this issue in post-trial motions, Burns is procedurally barred from raising the issue for the first time on appeal. *See Davis v. State*, 660 So. 2d 1228, 1247 (Miss. 1995) (*citing Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1993); *Russell v. State*, 607 So. 2d 1107 (Miss. 1992); *Fleming v. State*, 604 So. 2d 280 (Miss. 1992); *Cole v. State*, 525 So. 2d 365 (Miss. 1987), *cert denied*, 488 U.S. 934(1988)).

¶113. The prosecutor was simply making the character of the defendant clear to the jury. We find that the prosecutor was well within his rights to use any attribute of the defendant's character to rebut mitigating factors. The court below instructed the jury to consider any circumstance surrounding the life and character of the defendant as mitigating factors. All the prosecutor was attempting to show is that the life and circumstances of Burns were not mitigating factors. The foregoing argument aside, this issue is procedurally barred and not properly before this Court.

### Threatening Witnesses:

¶114. The following exchange occurred during the closing statements during the sentencing phase regarding Burns having threatened witnesses:

[MR. GEDDIE:] ...For example, is going to rob someone a mitigating circumstance? I submit not. Is murdering someone a mitigating circumstance? I'll submit not at all. Is stabbing a mitigating circumstance? I'll submit that is not a mitigating circumstance. Threats against witnesses -

MR. ELLIS: Objection, your Honor.

THE COURT: Overruled.

MR. GEDDIE: (Continuing)

Q. Threats against witnesses, certainly that's not mitigating...

¶115. Burns contends that these comments were improper because these facts were not contained within the record. There was, however, evidence contained within the record to maintain Burns' threats against witnesses. For example, Phillip Hale, during his testimony, stated that Burns threatened to kill Janie Taylor if she told anyone that he killed McBride. Furthermore, in one of the letters Burns wrote to Kohlheim, he stated, "I'm always thinking how and hell I'm going to escape and kill the MF'ing punks that told on me."

¶116. Further, this Court said in *Wells v. State*, 698 So. 2d 497 (Miss. 1997), "[c]ounsel is allowed considerable latitude in the argument of cases, and is limited not only to the facts presented in evidence, but also to deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. " *Id.* at 506 (*citing Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991); *Davis v. State*, 530 So. 2d 694, 701-02 (Miss. 1988)).

### Emphasizing a lack of victim's rights:

¶117. As the State asserts, Burns does not make it clear where the prosecution compared the defendant's rights to the victim's rights. However, the State cites two places to which Burns may have been referring.

> [MR. YOUNG:] ...He also said that now we're asking you to do to Joe Burns - JoJo Burns the same thing that he did to Mike McBride. That is far, far from the truth. I'm not asking you to rob JoJo Burns. I'm not asking you to stab JoJo Burns to death. I'm not asking you to sentence him to death without a fair trial and a fair jury. I'm asking you to put the wheels in motion for him to get the death penalty. He's asked for it, he deserves it and he should have it.
>
> \*\*\*
>
> [MR YOUNG:] ...Mike McBride had no trial. Joey Burns - JoJo Burns was his judge, his jury and his executioner. He's had a fair trial. He's asked for death penalty. We have presented the evidence to you that warrants it.

¶118. The State once again argues that the record contains no contemporaneous objection to these comments. *See Wells, supra.* Without waiving the procedural bar, the State contends that this issue is without merit. We agree.

¶119. The State analogizes the prior comments by the prosecution to an issue raised in *Wells* and *Davis, supra.* In *Davis*, during sentencing phase closing arguments, the prosecutor stated that Davis "'was the judge and the defense lawyer.... He was the jury. And he decided in his own mind to kill and murder.... Mr. Davis had due process.'" *Wells*, 698 So. 2d at 511 (*quoting Davis*, 684 So. 2d at 654). *Davis* presented an issue very similar to the one in the case *sub judice*. This Court, in *Davis*, held that since there was "no other portion of the closing argument to this effect, we find that the comments by the State were isolated and do not warrant a reversal." *Id.* at 655.

¶120. Following our reasoning in *Davis*, this issue is without merit.

## Describing the Murder as Torturous:

¶121. The prosecution made reference to the details of the murder in describing the incident.

[MR GEDDIE:]... Let's not forget in our deliberations the character of this murder. It was cruel. It was hard.

MR. ELLIS: Objection, your Honor.

THE COURT: Objection overruled.

[MR. GEDDIE:]... I'll submit to you that Mike did not have an easy death, could have been. That isn't what JoJo wanted. He - I'll submit to you that he was in a stabbing frenzy and during that frenzy, he not only stabbed the victim, but Phillip Hale, who tried to come and stop him, stabbed him in the foot. This man behaved in a wild manner to commit this terrible offense. And it was slow and it was a tortuous [sic] death.

MR. ELLIS: Objection, your Honor.

THE COURT: Objection will be sustained. Proceed.

[MR. GEDDIE:]... Remember, this is where we started with living Mike McBride, who liked to watch television, who liked to visit with people, who like to be a living, breathing human being, and this is what the Defendant left us, a tortured- -

MR. ELLIS: Objection, your Honor.

MR. GEDDIE: (Continuing) - - dead individual.

¶122. The State argues that describing this murder as torturous was a fair comment on the evidence. This Court agrees. The autopsy report revealed that McBride died from a combination of blunt force injuries to the head and neck caused by numerous blows to the head and back of the neck and exsanguination from the injuries to his face and neck.

¶123. The State relies on the United States Supreme Court holding in *Tuilaepa v. California*, 512 U.S. 967, 976 (1994) where the Supreme Court stated that "considering the detailed circumstances of the crime is constitutionally indispensable in capital sentencing." *Id.* Relying on the reasoning of the United States Supreme Court, this claim is without merit.

## Commenting that the murder was for Pecuniary Gain:

¶124. Relying on this Court's holding in *Willie v. State*, 585 So. 2d 660, 681 (Miss. 1991), the appellant contends that the prosecution was prohibited from using both that the murder occurred during a robbery and that the murder was for pecuniary gain as aggravators.

[MR. GEDDIE:]... I'll submit to you that the legislature of the State of Mississippi, the will of the people of the State, made a decision that people who make a living robbing people, people who go in

for the pecuniary gain, to get money from other people - -

MR. ELLIS: Objection, your Honor.

THE COURT: Objection overruled.

MR. GEDDIE: (Continuing) - - with a deadly weapon, whether it's a knife or a sharp fork or a Phillip's head screwdriver, and commit the crime of murder for money, for robbery, are to be punished more severely....

¶125. Again, this same issue was before this Court in *Davis, supra*. The appellant in that case argued that the lower court erred when the prosecution was allowed to submit the following aggravators:

1. whether the capital murder was committed intentionally while the defendant was engaged in the commission of armed robbery or flight after committing the crime of armed robbery.

2. whether the capital murder was committed for pecuniary gain.

*Davis*, 660 So. 2d at 1246. Davis timely objected to the submission of these aggravating circumstances as did Burns in the case now before the Court. Therefore, this issue is properly before the Court.

¶126. While this Court did prohibit the use of both the robbery aggravator and the pecuniary gain aggravator in *Willie*, 585 So. 2d at 680-81 (holding that the jury cannot be allowed to doubly weigh the two since they are actually one), in the case *sub judice*, "pecuniary gain" and "while engaged in the commission of armed robbery" were not presented to the jury as aggravating circumstances. In fact, the appellant does not claim that the prosecution presented both as aggravating circumstances, but rather claims that the prosecution "alluded to aggravators that remain undefined."

¶127. We find that the comments by the prosecution in this case do not require reversal. The prosecutor was simply trying to explain to the jury what he meant by making a living robbing people. Furthermore, the objection by defense counsel was sustained, and the prosecutor discontinued any more discussion of robbing for money and pecuniary gain. Unlike in *Willie*, both robbery for money and pecuniary gain were not submitted to the jury as aggravators and as such the defendant was not prejudiced by the comments. This issue is without merit.

### Personal Opinions of the Prosecutor:

¶128. Next, Burns contends that the prosecutor improperly injected his own personal opinion during the argument.

[MR. GEDDIE:] ... Now the legislature and the courts have set out yet another procedure for you to go systematically about determining whether or not Joseph Burns should suffer the penalty of death. I'll submit to you my position, the position of the State, that he should suffer death. That procedure is specifically set out in instruction that you will have with you.

[MR. YOUNG:]... I'm asking you to return the death penalty because the facts in this case warrant it.

[MR. YOUNG:]... Let's give JoJo what he deserves. I'll have no trouble living with it, because he asked for it and his acts warrant it.

¶129. First, the State correctly points out that counsel for defense failed to contemporaneously object to these comments. This Court has said many times over that "failure to object at trial and 'failure to include the reference in a motion for a new trial obviates his ability to assign the comments as error.'" *Davis*, 660 So. 2d at 1255 (*quoting* **Ahmad v. State,** 603 So. 2d 843, 846 (Miss. 1992)). Therefore, Burns is barred from raising this issue.

¶130. The procedural bar notwithstanding, attorneys are given broad latitude in criminal cases during closing arguments. *Davis,* 660 So. 2d at 1245; **Ballenger v. State**, 667 So. 2d 1242, 1269-70 (Miss. 1995); **Ivy v. State**, 589 So. 2d 1263, 1266 (Miss. 1991); **Wells v. State**, 698 So. 2d 497, 506 (Miss. 1997). Also, when a jury is properly instructed that statements made by counsel are not evidence, reversal is not required. **Ormond v. State**, 599 So. 2d 951, 961 (Miss. 1992). The trial judge, in the case *sub judice* did instruct the jury that arguments, statements and remarks of counsel are not evidence. Following the reasoning in **Ormond**, this issue is not only procedurally barred but is otherwise without merit.

¶131. This Court finds that Burns suffered no "unjust prejudice" due to any improper comments by the prosecutor as is required to be shown. **Wells,** 698 So. 2d at 507. Further, the defense counsel failed to preserve many of these issues for appeal such that they are not properly before this Court. For the foregoing reasons, this issue has no merit.

### XVI. MUST THE COURT REMAND THIS CASE FOR A NEW SENTENCING PROCEEDING, IN LIGHT OF PROSECUTION'S MENTIONING OF UNDEFINED AGGRAVATORS WHICH WERE VIGOROUSLY ARGUED TO THE JURY AS THE GROUNDS FOR A DEATH SENTENCE?

¶132. Finally, Burns contends that the trial court committed reversible error when the prosecutor was allowed to use undefined aggravators such as "especially heinous" and cruel. The State correctly points out that the only aggravating factor the jury was instructed on was whether or not the murder occurred during the commission of a robbery.

¶133. While the prosecutor never used the word heinous or especially heinous or atrocious, the following are comments by the prosecution to which the appellant refers.

> [MR. YOUNG:]... I want you to think about something that Rowland Geddie said. Think about the pain and suffering that Mike McBride went through. When he was yelling, why are you doing this to me, and being stabbed in the head, the neck, the back, the mouth, stabbed so many times that he died of blunt trauma and from bleeding to death.

> [MR. YOUNG:]...The one aggravating circumstance that you only need to consider in this case is the fact that it was committed during the course of a robbery.

¶134. The prosecutor did nothing more than refer to the facts of this case. The autopsy report, as discussed before, stated that McBride died from blunt force injuries to the head and neck. This Court recognizes that murders are never kind or gentle. The record before us supports the prosecutor's argument. The prosecutor was simply doing his job in attempting to elicit a death penalty conviction from the jury. This Court has said that "counsel may not, under the guise of argument, state facts that have not been proved by the evidence." **Wells v. State**, 698 So. 2d 497, 506 (Miss. 1997) (*citing* **Pierce v. State**, 289 So. 2d 901, 903 (Miss. 1974)). Such was not the case here. A thorough review of the record reveals that all of the prosecutor's

comments were supported by the record.

¶135. Unfortunately, this case is not the first case this Court has been asked to review wherein a defendant, after either stabbing and/or beating the victim to death, was charged with capital murder while in the commission of armed robbery and was sentenced to death. *See **Wilcher v. State***, 697 So. 2d 1087 (Miss. 1997); ***Wilcher v. State***, 697 So. 2d 1123 (Miss. 1997); ***Mack v. State***, 650 So. 2d 1289 (Miss. 1994); ***Blue v. State***, 674 So. 2d 1184 (Miss. 1996); ***Conner v. State***, 632 So. 2d 1239 (Miss. 1993). This Court can find no difference in the present case and these previously decided cases to warrant a finding that the sentence was disproportionate to the crime committed.

¶136. Twelve very able people determined after hearing the facts and arguments, observing the witnesses' demeanor, and viewing exhibits that Burns would pay with his life for the crime he committed. While the standard of review is heightened in death penalty cases, we find that the jury verdict and sentence was appropriate according to the law of our State. Thus, this issue is without merit.

## CONCLUSION

¶137. The issues presented on appeal, while ably presented to this Court, are without merit. The record reflects that there was sufficient evidence for the Lee County Grand Jury to indict Burns for capital murder while in the commission of armed robbery in violation of Miss. Code Ann. § 97-3-19(2)(e). Further, there was more than enough evidence for a jury of twelve (12) people to find Burns guilty of capital murder. The trial judge did not fail to follow the law available to guide him through a trial such as this one.

¶138. Neither the defendant nor anyone related to him or friends with him testified during the sentencing phase of the trial. The aggravating circumstance - while in the commission of armed robbery - in this case outweighed the mitigating factors thus meeting the burden as set out in the statute. The jury found this was sufficient to impose the death penalty. We agree.

¶139. Because we cannot say that Burns presented issues suitable to require reversal, this case is affirmed.

¶140. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH**

**AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (1972) AND M.R.A.P. 41(a).**

**PRATHER, C.J., ROBERTS AND SMITH, JJ., CONCUR. SULLIVAN, P.J. AND McRAE, J., CONCUR IN PART. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. WALLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. SULLIVAN, P.J. AND McRAE, J., JOIN IN PART.**

**BANKS, JUSTICE, CONCURRING:**

¶141. I concur in the result reached by the majority and all that it says except with respect to issue IX insofar as the majority approves the admission of the statement regarding the penitentiary. In my view, it suffices to say that the admission of this evidence, if error, is not of such a magnitude given the nature of the evidence as a whole and the way that it occurred as described by the colloquy between the court and counsel as to render the failure to grant a mistrial reversible error.

¶142. It is not my view that this evidence was admissible nor is it my view that its probative value outweighed its prejudicial effect. The fact is that the evidence, in the form of the response immediately preceding the response in question, showed that the murder was committed in order to avoid identification and a resulting criminal sanction. It adds nothing to that evidence, in my view, to show that the actor has been the subject of a prior criminal sanction. Avoiding a criminal sanction is a human motivation which exists whether or not the actor has suffered a previous sanction. If that fact adds anything to the issue of motive, it certainly does not add enough to outweigh the prejudicial effect of bringing in other crimes during the guilt phase. Moreover, this is a robbery murder where no motive for the homicide is required. Thus, it is readily apparent that showing, first a motive, avoiding arrest, and then a "motive" for the motive, having been caught before, it extends any rational basis for the admission of this evidence over the edge of propriety.

¶143. In my view, a timely objection had been made, and the proper response would have been to sustain the objection and instruct the jury to disregard the evidence. Here the defense did not object immediately and did not request an instruction to disregard in response to the trial court's invitation to do so, because of its express doubt as to whether the jury actually heard the remark. I cannot fault the defense for the action taken, but, once again given all of the circumstances neither can I fault the trial court for the failure to declare a mistrial. Nevertheless, this Court should not go out of its way to approve the use of evidence such as that in question.

**SULLIVAN, P.J., JOINS THIS OPINION.**

**WALLER, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶144. Although I agree with the majority that Joseph Daniel Burns' conviction and sentence to death should be affirmed, I must respectfully dissent on the introduction of the handwriting exemplars in Part VI.

¶145. It is true that the United States Supreme Court has found no legitimate expectation of privacy in handwriting under the Fourth Amendment. *See United States v. Mara*, 410 U.S. 19, 21 (1973) ("[h]andwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice."). In *Mara,* the petitioner was forced to furnish samples of his handwriting and printing through a grand jury directive. *Mara*, 410 U.S. at 22. The Supreme Court held that because Mara had no legitimate Fourth Amendment privacy interest in his handwriting, the grand jury directive did not violate Mara's constitutional rights and the government was under no obligation to make a preliminary showing of reasonableness before obtaining the handwriting sample. *Id.* at 21-22. In *Mara*, however, the government did not use trickery to obtain samples of Mara's handwriting.

¶146. In the case *sub judice*, Burns had been arrested, was represented by counsel and was in jail. The State could have easily obtained handwriting exemplars from Burns in several ways without resorting to trickery. An officer could have requested past examples of Burns' handwriting, such as checks or letters, or he could have asked Burns to consent to giving a sample and obtained a court order if Burns refused.

Instead, the State chose to trick Burns into writing without his attorney present. Such practice only invites contempt for the state law enforcement and prosecuting officials and heightened scrutiny of their actions, particularly when obtaining the necessary evidence can be done so easily through legitimate means.[2]

¶147. Despite the majority's assertion that Burns had no right to have counsel present when the exemplars were taken, the presence of Burns' attorney or the prior obtaining of a court order would have eased any possible concerns about the condition under which the handwriting samples were obtained and protected Burns from any other use of trickery by the State.

¶148. In dismissing Burns' Fourth Amendment argument, the majority writes, "We, therefore conclude, that when there is no expectation of privacy concern, using trickery as a method for obtaining handwriting exemplars is at worst bad practice." Unfortunately, labeling this use of trickery as bad practice does nothing to discourage its use in the future. Privacy is not the concern here. The concern is public confidence in the administration of justice, the inviability of the attorney client relationship and the obfuscation of the rules of procedure. The handwriting exemplars should have been excluded.

**MILLS, J., JOINS THIS OPINION. SULLIVAN, P.J., AND McRAE, J., JOIN IN PART.**

1. For reasons not contained within the record, Burns was formerly know as Kingsley.

2. The approach of the State in *Sewell v. State* is a good demonstration of a proper method to obtain exemplars when handwriting is an issue and when a defendant is represented by counsel. *Sewell v. State*, No. 93-KA-01396-SCT (Miss. Oct. 15, 1998)