987 So.2d 461 (2008)
Victor Lowell FRYOU, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00635-COA.
Court of Appeals of Mississippi.
April 8, 2008.
Rehearing Denied July 22, 2008.
*463 Glenn S. Swartzfager, Brenda Jackson Patterson, attorneys for appellant.
Office of the Attorney General by Stephanie Breland Wood, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. After a three-day trial in the Circuit Court of Harrison County, Victor Lowell Fryou was convicted of capital murder for the killing of Patrick Devriendt while in the commission of a robbery. The circuit court sentenced him to life in prison. Aggrieved by his conviction, Fryou appeals. He asserts that the circuit court committed the following errors that require reversal of his conviction:
I. It was error to deny a lesser-included offense jury instruction on simple murder.
II. It was error to deny a lesser-included offense jury instruction on manslaughter.
III. It was error to deny a jury instruction on Weathersby.

¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On the morning of August 20, 2005, Fryou went to the residence of the victim, Devriendt. While there he proceeded to stab and cut the victim fifty-seven times before driving off in the victim's truck and allegedly taking his wallet and $1,000 cash.
¶ 4. Fryou admitted to killing Devriendt, but he claimed it was in self-defense or that he was provoked by comments Devriendt made about Fryou's girlfriend, Aubrey Newsome. He testified at trial that on the day he killed Devriendt, he went to Devriendt's home looking for work. Fryou said nothing happened at first, and they just sat around the trailer for a while.
¶ 5. Fryou said that at some point Devriendt asked him about Newsome, and Fryou responded that he left her. Devriendt then allegedly made a derogatory comment about Newsome. At that point, Fryou became upset and tried to hit Devriendt. Devriendt dodged his punch, and Fryou fell to the floor. Devriendt then jumped on Fryou's back and repeatedly slammed Fryou's head into the kitchen floor. Fryou claimed that he found a knife on the floor. He said he picked up the knife and began stabbing Devriendt in self-defense. Fryou claimed he blacked out and did not remember any of the fight. He said the next thing he remembered was standing over Devriendt's dead body.
¶ 6. Fryou's statements that he made to police after his arrest, however, were contrary to his trial testimony. Previously, he told Captain Ron Pullen, with the Harrison County Sheriff's Department, that he swung at Devriendt twice. After that, he told Captain Pullen that Devriendt tried to hold him down on the floor. Fryou testified at trial that he did not remember the fight; however, he initially recounted his version of the fight to the officers. Fryou *464 said he stabbed Devriendt, and he kept stabbing him. He said the fight began in the kitchen, but it carried over into the living room. Throughout the fight, Devriendt tried to get the knife from Fryou. He told Captain Pullen that when Devriendt finally fell down by the wall, he stabbed him in the back a couple more times to make sure he did not get up.
¶ 7. Newsome testified that, on the day of the killing, Fryou left at 3:35 a.m. to go look for work at the docks. She said he took a large knife with him. According to Newsome, Fryou returned three hours later, and he told her that he had killed Devriendt. She believed Fryou killed Devriendt because she had sex with Devriendt while Fryou was in jail. Newsome said that a few weeks earlier she had approached Devriendt to borrow money to pay Fryou's bond. Devriendt allegedly agreed to give her some money, but only if Newsome had sex with him. Her testimony was that she had sex with him, and he gave her forty or forty-five dollars, which was not enough to get Fryou out of jail.
¶ 8. Fryou later found out about Newsome's encounter with Devriendt. Fryou confronted him about it shortly after getting out of jail, but there was no altercation between the two men at the time. Afterwards, Fryou and Devriendt did not have any further contact until the morning of the homicide.
¶ 9. On the night of August 21, 2005, Officer Michael Kamien, with the Gulfport Police Department, responded to a call from Newsome to come to the Oasis Resort at the Grand Casino. Upon arrival, Officer Kamien found a hysterical Newsome, who told him that her boyfriend had killed someone. He took Newsome to her room where she received a call from Fryou. Officer Kamien managed to briefly talk to Fryou, who told him that he killed someone for having sex with Newsome.
¶ 10. Deputy Coley Judy also responded to Newsome's call. Afterwards, she brought Newsome to the suspected crime scene, but she discovered nothing outside the trailer. She then took Newsome to the residence where Newsome and Fryou had been staying. They had been living with Fryou's sister, Valerie. Valerie gave Deputy Judy permission to search the premises. In a trash can outside, Deputy Judy found a pair of bloody shorts. Thereafter, she returned to the suspected crime scene. Upon entering the trailer, she discovered Devriendt's dead body.
¶ 11. Officer Kevin Jackson, who was with the Harrison County Sheriff's Department at the time of the incident, recovered a pair of bloody shoes on the side of the road. He later recovered a plaid shirt and Devriendt's wallet buried in Valerie's yard. He said he was unable to locate the items until Fryou showed him where he threw the shoes and where he buried the shirt and the wallet. Officers also found Devriendt's stolen truck abandoned behind a laundromat.
¶ 12. Nancy Kurowski, evidence technician for the Harrison County Sheriff's Department, investigated the crime scene. She documented the blood found throughout the residence, and she noted that the mini blinds over the windows had been covered with sheets to obstruct vision into the trailer. In the bedroom, Kurowski found an attache case with a damaged lock and a cigar box that appeared to have been dropped or tossed on the ground. She said there were coins scattered around the room, and she thought they might have come from the box.
¶ 13. The police were unable to immediately apprehend Fryou. He had left town when he noticed the police at the hotel with Newsome. However, he returned to *465 his sister's home the next day, and he offered to turn himself in to the police. Captain Pullen went to Fryou's sister's trailer and arrested Fryou. Captain Pullen advised Fryou of his Miranda rights and transported him to the sheriff's department. Once at the sheriff's department, Captain Pullen again advised Fryou of his rights and then questioned him about the death of Devriendt. Fryou then confessed to killing Devriendt and stealing his wallet and truck.
¶ 14. Fryou later denied that he stole Devriendt's wallet or any money. He testified that Newsome stole the wallet when she went to see Devriendt. Fryou said that he went to Devriendt's trailer to return the wallet, which Newsome had stolen.
¶ 15. A Harrison County grand jury indicted Fryou for capital murder. At trial, the jury refused to find that Fryou acted in self-defense and convicted him of capital murder. The circuit court sentenced Fryou to life in prison without parole or probation.

STANDARD OF REVIEW
¶ 16. Our standard of review regarding the grant or denial of jury instructions is as follows:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Byrom v. State, 863 So.2d 836, 874 (¶ 129) (Miss.2003) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).

ANALYSIS OF ISSUES

I. Simple Murder Instruction
¶ 17. Fryou first argues that the circuit court erred by denying the defense's requested jury instructions D-14 and D-15, which instructed the jury on the lesser-included offense of simple murder. Fryou argues that the jury could have conceivably found him guilty of the lesser crime of murder instead of convicting him of capital murder.
¶ 18. A criminal defendant has a right to assert alternative theories of defense, even if those theories are inconsistent. Reddix v. State, 731 So.2d 591, 593(¶ 9) (Miss.1999) (citing Love v. State, 441 So.2d 1353, 1356 (Miss.1983)).
¶ 19. "Lesser included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense." Sanders v. State, 781 So.2d 114, 119(¶ 16) (Miss. 2001) (quoting Welch v. State, 566 So.2d 680, 684 (Miss.1990)).
¶ 20. We must consider the following to determine whether there is an evidentiary basis for a lesser-included offense instruction:
[A] [l]esser included offense instruction should be granted unless the trial judge  and ultimately this court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable references which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one element of the principal charge).
*466 Spicer v. State, 921 So.2d 292, 313-14(¶ 44) (Miss.2006) (quoting Agnew v. State, 783 So.2d 699, 702-03(¶ 10) (Miss.2001)).
¶ 21. For a judge to instruct the jury that simple murder is a lesser-included offense to capital murder while in commission of a robbery, "the evidence must support a finding that the killing was not committed during the commission of armed robbery in order to justify a simple murder instruction." Bell v. State, 725 So.2d 836, 854(¶ 55) (Miss.1998) (quoting Abram v. State, 606 So.2d 1015, 1035 (Miss.1992) (overruled on other grounds)). In Bell, the supreme court agreed with the denial of the instruction, finding that there was no evidence to suggest the murder was not committed during a robbery. Id.
¶ 22. Similarly, in Spicer, the supreme court found that Spicer presented no evidence that would allow the jury to convict him of any other type of murder. Spicer, 921 So.2d at 314(¶ 46). There was also "too much probative evidence in the record of the underlying felony for a reasonable juror to find Spicer guilty of simple murder beyond a reasonable doubt." Id.; see also Walker v. State, 913 So.2d 198, 237 (¶ 145) (Miss.2005) ("[T]here is no evidence to support a theory of simple murder when the underlying felony to that murder is glaringly obvious.").
¶ 23. In the present case, Fryou admitted on the stand that he killed Devriendt and took his truck. Even though he later denied it, following Fryou's arrest, he told police officers that he took Devriendt's wallet. Newsome testified that Fryou came home with Devriendt's wallet and approximately $1,000 cash. Officers later found the wallet buried in Fryou's sister's yard after Fryou told them where he buried it.
¶ 24. As in Spicer, there was no evidence that Fryou acted with "deliberate design," a "depraved heart," or "in commission of any felony" not listed in Mississippi Code Annotated section 97-3-19 (Rev.2006). Spicer, 921 So.2d at 314(¶ 46). There was sufficient evidence to convict Fryou of capital murder. Furthermore, there was no evidence that would have allowed a jury to convict Fryou of simple murder and not find capital murder. We do not find the circuit court erred in denying Fryou's requested jury instructions on simple murder. This issue is without merit.

II. Manslaughter Instruction
¶ 25. Fryou next argues that the circuit court erred by denying the defense's proposed jury instruction D-22, which instructed the jury on manslaughter. Fryou claims the circuit court was in error because the jury could have found that he killed Devriendt in the heat of passion instead of finding that he killed him during the commission of a robbery.
¶ 26. In Burns v. State, 729 So.2d 203, 225 (¶ 103) (Miss.1998), the supreme court addressed a similar argument. The supreme court found that because Burns was in the commission of a robbery when he killed the victim, there was no need for a manslaughter instruction. Id. Furthermore, because the homicide occurred during the course of a robbery, it was capital murder, regardless of the killer's intent. Id. (quoting Griffin v. State, 557 So.2d 542, 549 (Miss.1990)).
¶ 27. It was not error for the circuit court to refuse a lesser-included manslaughter instruction when the defendant was found to have committed the underlying robbery that was the basis for the charge of capital murder. Jacobs v. State, 870 So.2d 1202, 1209(¶ 19) (Miss.2004). In Jacobs, the supreme court found that because the jury found that the defendant committed robbery, he was guilty of capital *467 murder regardless of whether the circuit court instructed the jury on manslaughter. Id.
¶ 28. Additionally, words alone are not enough to create the passion necessary for heat of passion. Phillips v. State, 794 So.2d 1034, 1037(¶ 10) (Miss. 2001). "This passion should be an emotion brought about by some insult, provocation, or injury, which would produce in the minds of ordinary men `the highest degree of exasperation.'" Id. (quoting Graham v. State, 582 So.2d 1014, 1018 (Miss.1991)). "Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter." Id. (quoting Gates v. State, 484 So.2d 1002, 1005 (Miss.1986)); see also Carter v. State, 722 So.2d 1258, 1262(¶ 15) (Miss.1998).
¶ 29. The only evidence Fryou cites to support heat of passion was a single comment by Devriendt after Fryou told him that he left Newsome. Fryou claims it was after Devriendt allegedly made the derogatory remark that Fryou began to attack him.
¶ 30. Ultimately, the jury found that Fryou killed Devriendt while in the commission of a robbery. Fryou testified that he killed Devriendt and that he took his truck after he killed him. Therefore, not only does the evidence support the verdict, but because Fryou admitted the killing and the robbery, the evidence would not have allowed the jury to find manslaughter. Fryou killed Devriendt while engaged in a robbery; therefore, his intent in killing him was irrelevant. Burns, 729 So.2d at 225 (¶ 103).
¶ 31. Because Fryou testified to killing Devriendt and stealing his truck, "the evidence could not support a verdict of manslaughter without capital murder." Bell v. Watkins, 692 F.2d 999, 1005 (5th Cir.1982). No reasonable jury could find Fryou guilty of manslaughter and conversely not guilty of capital murder. See Spicer, 921 So.2d at 313-14(¶ 44) (quoting Agnew, 783 So.2d at 703(¶ 10)).
¶ 32. We find the circuit court did not err in denying the requested jury instruction on manslaughter. This issue is without merit.

III. Weathersby Rule
¶ 33. Lastly, Fryou argues that the circuit court erred in refusing to grant the defense's requested jury instruction D-13. Fryou claims that his version of the events should be accepted as true because there was no one else in the trailer when he killed Devriendt who could contradict his version of events.
¶ 34. The Weathersby rule is "a statement of our general standards by which courts determine whether a directed verdict of acquittal is warranted." Green v. State, 631 So.2d 167, 175 (Miss.1994) (citing Jackson v. State, 551 So.2d 132, 136 (Miss.1989)). Under Weathersby, "the reasonable, uncontradicted story of the defendant or his witnesses must be accepted as true." Id. at 174 (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 35. If Weathersby applies and acts as an absolute defense, the court should grant a directed verdict of acquittal. Id. (citing Blanks v. State, 547 So.2d 29, 33 (Miss.1989)). Weathersby is inapplicable if the defendant's account is merely contradictory or if "the defendant's conduct and statements following the killing are inconsistent with his version of the events as recounted at trial." Id.
¶ 36. "[T]he Weathersby Rule is not the proper subject of an instruction to the jury." Id. at 175 (quoting Windham v. State, 602 So.2d 798, 800 n. 3 (Miss.1992)). Whether a defendant is to *468 receive the benefit of the Weathersby rule is a decision for the court and not for the jury. Id. (citing Null v. State, 311 So.2d 654, 658 (Miss.1975)).
¶ 37. Following his arrest, Fryou recounted to police officers what happened during the fight with Devriendt, and he told them he took the wallet. He admitted stabbing Devriendt a couple times to make sure he did not get up. On the stand, he recounted his earlier statement and said he was trying to return the wallet that Newsome had stolen. He also testified that he did not remember any of the fight. All he remembered was grabbing the knife to defend himself and then standing over Devriendt's body.
¶ 38. As shown, Fryou's statements to police officers following his arrest were clearly inconsistent with his testimony at trial. Weathersby was, therefore, inapplicable. The circuit court was correct in not considering it. The circuit court also properly refused the defense's requested jury instruction that charged the jury to apply the Weathersby rule because its application was for the court to decide. This issue is without merit.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN PRISON WITHOUT PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.