# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01382-COA

**ROBERT BLAKE ASHMORE**                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2019 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BOTY McDONALD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/15/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1. A Coahoma County Circuit Court jury found Robert Ashmore guilty of murdering Mason Howard, who came to Ashmore's home on April 8, 2016. The Coahoma County Circuit Court sentenced Ashmore to life imprisonment in the custody of the Mississippi Department of Corrections. After his post-trial motions were denied, Ashmore appealed, challenging the sufficiency and the weight of the evidence to support the guilty verdict, especially in light of his claim of self-defense.[1] After a review of the record and the

---

[1] Ashmore argues on appeal that his case should be reviewed under the "Castle doctrine" defense. As will be discussed, the jury was not instructed on that particular defense but instead under a "Stand your Ground" defense instruction that Ashmore proposed and that the circuit court gave.

arguments of counsel, we affirm the circuit court's judgment.

**Facts**

¶2.     Ashmore, age 20, and his wife, Cassie Ashmore, attended a bonfire at the home of Dawson Stanley on April 8, 2016. Mason Howard, a friend of the Ashmores, and others gathered at this semi-regular event. At some point, the bonfire got low, and Stanley added two pallets to the fire. Thinking that the fire was then getting too hot, Brian Willard removed one pallet and threw it to the side. It landed close to Cassie, which angered Ashmore, who then complained to Stanley and Willard that the pallet almost hit his pregnant wife.

¶3.     After Ashmore walked away, Howard came over to Cassie, Stanley, and Willard to ask what had happened. Seeing this engagement, Ashmore returned and accused Howard of "trying to talk to his wife." Ashmore had previously accused Cassie of having an affair with Howard, so he did not like that Howard was talking to her. Ashmore was then more upset and left before, as he declared, he "murdered somebody." A friend, Tommy Williams, drove Ashmore home after Ashmore retrieved a shotgun from his truck. Williams dropped Ashmore off and left.

¶4.     Howard decided that he wanted to go to Ashmore's home to talk with him further. Thinking this was unwise, given that Ashmore was obviously upset, another friend named Clay Fraize, who was Cassie's brother and Ashmore's brother-in-law, tried to stop Howard, but his effort was to no avail. Howard left and drove to Ashmore's house with Christian Upchurch. Fraize and Jon Emerson followed in a separate truck. Meanwhile, Williams received a call that Howard was on his way to see Ashmore, so Williams turned around and

2

went back.

¶5.     When Howard and Upchurch arrived at the house, Ashmore came out holding his gun, albeit not in a threatening manner. Howard was unarmed, but he did outweigh Ashmore: Howard was 242 pounds to Ashmore's 135 pounds. As Howard started walking toward Ashmore, Ashmore turned and walked back into his house. Upchurch, who remained in the truck, later said Howard was not aggressive or yelling—just talking. Howard followed Ashmore into the house.

¶6.     Williams arrived just as Ashmore was going back into his house with Howard behind him. Williams proceeded to the front door as well. When Fraize and Emerson arrived, Emerson stayed by Howard's truck, talking to Upchurch, while Fraize went to the front door where he saw Williams and Howard. Fraize said he saw Ashmore inside with a shotgun pointed at Howard, who had stepped inside about two to four feet. Howard asked Ashmore what was going on and why he was angry. Ashmore responded by asking Howard why was he trying to talk to Cassie. Howard denied he was trying to do this. Meanwhile, Fraize, who was just outside the open door, tried to convince Ashmore to put the gun down. Williams, who had stepped inside as well, tried to "drag" Howard back out, telling Howard not to worry about it and encouraging him to leave. Ashmore told Howard not to come near him or he would shoot. Howard pulled away from Williams and, according to Williams, started going toward Ashmore, but Fraize testified that Howard did not move. At that point, Ashmore shot Howard in the head. Howard fell back, shattering the glass door, and everyone ran.

3

¶7.    Ashmore was indicted for first-degree murder and tried on July 24-25, 2019.  In addition to the testimony of Fraize, Williams, Stanley, Upchurch, all of whom witnessed the shooting, the State called the medical examiner, Dr. Mark LeVaughn, and Captain Norman Starks from the Clarksdale Police Department to testify.  Ashmore's videotaped statement, which he gave to Starks several hours after the shooting, was played for the jury.  In it, Ashmore said that Howard had called him on the phone and threatened him before going to Ashmore's house.  Ashmore also said that Howard kicked in the front door.  He said that when Howard came at him in the living room of his house, he shot Howard in self-defense.  But according to Captain Starks, Howard's phone records showed no call was made to Ashmore and Upchurch, who had ridden to Ashmore's house with Howard, testified that Howard made no calls en route.  Captain Starks also testified that Ashmore's front door was not damaged or even marred.  No other person present testified that Howard forcibly entered the house or threatened Ashmore.

¶8.    After the State rested its case, Ashmore moved for a directed verdict, which the circuit court denied.  Ashmore then testified in his defense.  He re-stated what he had said in his recorded statement.  He admitted that he did not like that Howard was talking to Cassie.  But Ashmore said he had gone home only to have Howard call him and threaten him and then show up on his property, kick in his front door, and come at him.

¶9.    After being instructed on murder and manslaughter and on Ashmore's self-defense theory, the jury deliberated and returned a guilty verdict on the first-degree murder charge.  Ashmore filed a motion for judgment notwithstanding the verdict and a motion for a new

trial. The circuit court denied the motions.

¶10.   Ashmore appealed and raises as error the circuit court's denial of Ashmore's motion for a JNOV and motion for a new trial. He frames and argues these issues under a "Castle Doctrine" defense. Ashmore claims that the circuit court ignored the overwhelming and undisputed evidence that he was in his home when Howard unlawfully entered it. Therefore, in defense of himself and his home, Ashmore claims Howard's homicide was justified.

**Discussion**

I.       **Whether the circuit court erred in denying Ashmore's motion for judgment notwithstanding the verdict.**

¶11.   "Our review of the denial of a motion for directed verdict and a motion for a JNOV is under the same standard of review[:] a challenge to the legal sufficiency of the evidence." *Bradford v. State*, 102 So. 3d 312, 314 (¶6) (Miss. Ct. App. 2012). Our review is de novo. *Lewis v. Rula*, 293 So. 3d 317, 319 (¶4) (Miss. Ct. App. 2019).

¶12.   In reviewing a motion for a JNOV, we, like the trial judge, must accept as true all of the evidence favorable to the State along with all reasonable inferences from that evidence and disregard the evidence favorable to the defendant. *Bryant v. State*, 151 So. 3d 1025, 1029 (¶14) (Miss. Ct. App. 2014). "We will reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Bradford*, 102 So. 3d at 315 (¶7) (internal quotation marks omitted). Our inquiry then centers on the elements of the offense charged and whether the evidence shows beyond a reasonable doubt that the accused committed the crime charged. *Beasley v. State*, 136 So. 3d 313, 401-02 (¶29) (Miss. 2014).

"A conviction is sufficiently supported when it can be established, beyond a reasonable doubt, that every element of the offense was present." *Phillips v. State*, 285 So. 3d 685, 692 (¶26) (Miss. Ct. App. 2019), *cert. denied*, 284 So. 3d 754 (Miss. 2019).

¶13. Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014) defines the elements of first-degree murder as follows:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
>> (a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder;

The elements of self-defense are also codified in Mississippi Code Annotated section 97-3-15(1)(e) and (f) (Rev. 2014):

> (1) The killing of a human being . . . shall be justifiable in the following cases:
>
>> . . . .
>
>> (e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which such person shall be;
>
>> (f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished. . . .

¶14. Ashmore was indicted for the crime of first-degree murder, i.e., that

> Robert Blake Ashmore, on or about April 9, 2016, in the County and State aforesaid and within the jurisdiction of this Court, unlawfully, wilfully and feloniously, without the authority of law, and with deliberate design to effect

6

death, and not in necessary self-defense, kill[ed] Mason Howard, a human being, by shooting him in the head with a shotgun.

The elements the State needed to prove included that (1) Ashmore killed Howard; (2) by shooting Howard in the head with a shotgun; and (3) Ashmore acted unlawfully, wilfully and feloniously with "deliberate design" to cause Howard's death. In addition to proving the elements of murder, because Ashmore claimed self-defense, the State had to prove beyond a reasonable doubt that Ashmore was not acting in necessary self-defense. *Harris v. State*, 937 So. 2d 474, 481 (¶23) (Miss. Ct. App. 2006).

¶15. Because the shooting took place in Ashmore's home, Ashmore could have availed himself of a special presumption of fear of imminent danger found in the "Castle Doctrine," as codified in Mississippi Code Annotated section 97-3-15(3):

> (3) A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, . . . upon him or another or upon his dwelling, . . . if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered a dwelling, . . . or the immediate premises thereof . . . and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.

¶16. There is a model jury instruction on the "Castle Doctrine" defense, but Ashmore did not propose it to the Court; instead he chose to submit a "Stand your Ground" instruction, based on Mississippi Code Annotated section 97-3-15(4).[2] Accordingly, the circuit court could not be faulted for not giving the "Castle Doctrine" jury instruction. *See Collins v.*

---

[2] Section 97-3-15(4) provides, "A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (1)(e) or (f) of this section if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable."

*State*, 594 So. 2d 29, 35 (Miss. 1992) (claim of lack of jury instruction fails, among other reasons, if the defendant does not propose the proper instruction); *Neal v. State*, 15 So. 3d 388, 408 (¶51) (Miss. 2009) ("Because Neal did not tender a heat-of-passion-manslaughter jury instruction to the trial court or object to the denial of the State's heat-of-passion-manslaughter jury instructions, he is procedurally barred from arguing on appeal that the jury should have been instructed on heat-of-passion manslaughter."). The circuit court gave all the instructions Ashmore proposed, and Ashmore made no objection to any of the instructions the State proposed. In his post-trial motions to the circuit court, Ashmore did not claim that the jury was not properly instructed on the Castle Doctrine, nor has he claimed that on appeal.

¶17. Even though the jury was not instructed on the "Castle Doctrine Defense," Ashmore contends that he acted in self-defense as defined by that doctrine and that the State did not disprove it. Ashmore is procedurally barred from arguing the "Castle Doctrine" defense, given that he proposed no such instruction and failed to raise it with the circuit court in his post-trial motions. To preserve an error for appeal, it must first have been raised to the trial court below. *Manyfield v. State*, 296 So. 3d 240, 248 (¶26) (Miss. Ct. App. 2020).

¶18. Reviewing the record on the evidence presented to the jury and the instructions they were given, we find there was sufficient evidence to disprove Ashmore's claim of self-defense and prove the elements of first degree murder. Ashmore contends that he had a right to be in his home and was not engaged in any unlawful activity, that he was not the aggressor, and that Howard had forcibly and unlawfully entered his home. But there was

evidence directly contradicting Ashmore's claim of self-defense, creating disputes of fact for the jury to resolve. Most obvious is the evidence that Howard did not "forcibly and unlawfully" enter Ashmore's home. Contrary to Ashmore's assertion, the testimony is undisputed that Howard merely walked in the open front door. There were no markings on the door to reflect a forcible entry to contradict Ashmore's testimony that Howard had kicked the door in. Upchurch testified that Howard merely followed Ashmore into the house. Even accepting Ashmore's testimony that the glass door was open, but that he had closed the wooden door, he admitted that the wooden door was unlocked and that Howard could walk right in. Ashmore was the only witness to testify to Howard's alleged "forcible entry." Moreover, there was no testimony that Ashmore told Howard to leave. In our opinion, there was sufficient evidence presented for a jury to find that Ashmore did not shoot Howard in self-defense.

¶19. In addition to presenting sufficient evidence that Ashmore did not act in self-defense, the State also put forth sufficient evidence to support a jury verdict of guilty on the other elements of murder. It is undisputed that he did kill Howard by shooting him with a shotgun. The jury was instructed on the definition of deliberate design murder to determine if Ashmore acted unlawfully, wilfully, and feloniously and with such intent:

> The Court instructs the Jury that the term "deliberate design," as used in these instructions, means intent to kill, formed before the moment of the act of killing took place, without authority of law and not legally justifiable, excusable, or under any circumstances that would reduce the act to a lesser crime. Deliberate design under this definition cannot be formed at the time of the act that produces the death of another.
>
> The word "deliberate" always indicates a full awareness of what one is doing,

and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, contemplate.

. . . .

The Court instructs the jury that the "deliberate design to effect death" referenced elsewhere in these instructions does not have to exist in the mind of the slayer for any given length of time; and that such element of the crime of murder is satisfied if you find beyond a reasonable doubt that the defendant formed such design at any time before the commission of the act which caused the death of the decedent and continued to have such design at the time of the commission of such act, if any.

We have previously approved of both instructions in *Craft v. State*, 970 So. 2d 178, 181 (¶9), (¶11) (Miss. Ct. App. 2007).

¶20.    Concerning the element "with deliberate design," we have said:

The essence of the required intent is that the accused must have had some appreciable time for reflection and consideration before committing the fatal act. Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent. Furthermore, deliberate design . . . may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury.

*Parvin v. State*, 212 So. 3d 863, 868 (¶7) (Miss. Ct. App. 2016). In *Parvin*, a case where the defendant was accused of killing his wife, there were no eyewitnesses to the incident but we found there was still sufficient evidence to support a murder conviction. *Id*. at 870 (¶16). This included inconsistent statements Parvin made as to how he tripped and how the gun went off. *Id*. at 868-69 (¶¶9-10). The State also presented testimony about how Parvin deviated from his usual practice of storing his guns outside rather than having it in his bedroom that night. *Id*. at 869 (¶12). A forensic firearms expert tested Parvin's shotgun and testified that the wounds were inconsistent with an accidental discharge. *Id*. at (¶11).

10

Finally, Parvin's mistress's testimony was enough for a jury to infer a motive for Parvin to eliminate his wife. *Id.* at 869-70 (¶13). In summary, we stated:

> We must always recognize that the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. The credibility of witnesses is not for the reviewing court. Here, the standard of review for this issue is not whether this Court finds that the State proved the defendant's guilt. Instead, we must view the evidence in the light most favorable to the prosecution and then decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 870 (¶15) (citations and internal quotation marks omitted).

¶21. In this case, there were eyewitnesses to the shooting. The proof showed that although the shooting occurred inside the house, Ashmore first met Howard outside. Ashmore did not tell Howard to leave but instead proceeded to walk back to his house without closing or locking the door. Ashmore's claim that Howard kicked in the front door was contradicted by the physical evidence (no marks on the door) and testimony from eyewitnesses that Howard simply walked in behind Ashmore. Moreover, when Howard entered the home, he and Ashmore talked for several minutes; Howard was trying to determine why Ashmore was so upset, and Ashmore was asking why Howard was talking to Ashmore's wife. Ashmore had time to decide what action to take. "Although our law has never prescribed any particular ex ante time requirement, the essence of the required intent is that the accused must have had some appreciable time for reflection and consideration before committing the fatal act." *Brown v. State*, 194 So. 3d 139, 148 (¶30) (Miss. Ct. App. 2015). While Fraize and Williams may disagree whether Howard was advancing toward Ashmore at the exact moment Ashmore shot, neither characterized Howard's behavior as threatening or

aggressive. Further, a jury could infer "deliberate design" from the fact that Ashmore held his shotgun trained on Howard. *Craft v. State*, 970 So. 2d 178, 183 (¶17) (Miss. Ct. App. 2007) ("Deliberate design may be inferred from the circumstances, such as the use of a deadly weapon."). Viewing this evidence in the light most favorable to the State, we are of the opinion that a rationale juror could find that each element of the crime of murder was proved. Therefore, the circuit court did not err in denying Ashmore's motion for judgment notwithstanding the verdict.

## II. Whether the circuit court erred in denying Ashmore's motion for a new trial.

¶22. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017). The evidence "is weighed in the light most favorable to the jury's verdict." *Fontenot v. State*, 287 So. 3d 322, 325 (¶10) (Miss. Ct. App. 2019) (quoting *Lindsey*, 212 So. 3d at 45 (¶14)). Our "standard of review of a trial court's denial of a motion for a new trial is abuse of discretion." *Goldsmith v. State*, 195 So. 3d 207, 212 (¶17) (Miss. Ct. App. 2016).

¶23. Here Ashmore's conviction of murder was not so contrary to the weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The evidence showed that when Howard arrived at Ashmore's house, Ashmore came out holding his shotgun. When Howard followed Ashmore inside, Ashmore pointed the shotgun at Howard, who was unarmed. At no point did Ashmore tell Howard to leave. Moments passed as they

12

talked, yet Ashmore held the gun fixed on Howard even though Fraise tried to get Ashmore to put it down. Howard had not threatened Ashmore either before arriving or at the time of the shooting. The only evidence presented to dispute these facts was given by Ashmore. But his testimony that Howard called and threatened him was contradicted by the record of calls in Howard's phone that was impounded that night. Ashmore's testimony that Howard unlawfully entered the house by kicking in the door was contradicted by the fact that the door was not damaged and by witness testimony that Howard had walked right into the home through an unlocked door. What little evidence that was presented in favor of Ashmore (the fact that he was in his home doing nothing illegal) is acceptably outweighed by the evidence that Ashmore may have intended to lure Howard into his home and then shoot him. The jury was the ultimate arbiter of these facts. *Robinson v. State*, 247 So. 3d 1212, 1227 (¶31) (Miss. 2018) ("When the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony."). The jury may draw "reasonable inferences from the evidence as it deems justified." *Jones v. State*, 149 So. 3d 1060, 1066 (¶26) (Miss. Ct. App. 2014) (quoting *Renfro v. State*, 118 So. 3d 560, 564 (¶14) (Miss. 2014)). After our review, we find that the jury's verdict was not contrary to the overwhelming weight of the evidence, and therefore the circuit court did not err in denying Ashmore's motion for a new trial.

**Conclusion**

¶24. Because the evidence presented against Ashmore was sufficient to prove the elements of murder, and because the overwhelming weight of the evidence did not warrant a new trial,

13

we affirm the circuit court's judgment.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.**